

# Notice of Service of Process

**DB2 / ALL**
**Transmittal Number: 26494978**
**Date Processed: 03/06/2023**

| | |
|---|---|
| **Primary Contact:** | John Matheson<br>Celebrity Financial, Inc.<br>9800 Buccaneer Mall PO Box 16<br>1 2<br>St Thomas, VI 00802-2409<br>VI |
| **Electronic copy provided to:** | Mona Spenceley<br>Legal Department |

| | |
|---|---|
| **Entity:** | Celebrity Home Loans, LLC<br>Entity ID Number  4036448 |
| **Entity Served:** | Celebrity Home Loans, LLC |
| **Title of Action:** | Michael Blake vs. Celebrity Home Loans, LLC |
| **Matter Name/ID:** | Michael Blake vs. Celebrity Home Loans, LLC (13730806) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Cook County Circuit Court, IL |
| **Case/Reference No:** | 2023CH01872 |
| **Jurisdiction Served:** | Illinois |
| **Date Served on CSC:** | 03/02/2023 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Mcguire Law, P.C<br>312-893-7002 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

Ex. 1

Hearing Date: 6/27/2023 9:15 AM
Location: Court Room 2508
Judge: Gamrath, Celia G

FILED
2/24/2023 6:57 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH01872
Calendar, 6
21622998

FILED DATE: 2/24/2023 6:57 PM   2023CH01872

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |

Summons - Alias Summons                                    (12/01/20) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

MICHAEL BLAKE, individually and on behalf
of similarly situated individuals,

_____
Plaintiff(s)

v.

CELEBRITY HOME LOANS, LLC, and
CELEBRITY FINANCIAL, INC.

_____
Defendant(s)

c/o Illinois Corporation Service Company, 801
Adlai Stevenson Drive, Springfield, IL 62703

_____
Address of Defendant(s)

Case No.   2023CH01872

Please serve as follows (check one):   ○ Certified Mail   ○ Sheriff Service   ○ Alias

## SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached.
You are summoned and required to file your appearance, in the office of the clerk of this court,
within 30 days after service of this summons, not counting the day of service. If you fail to do so, a
judgment by default may be entered against you for the relief asked in the complaint.

### THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

To file your written appearance/answer **YOU DO NOT NEED TO COME TO THE
COURTHOUSE.** You will need: a computer with internet access; an email address; a completed
Appearance form that can be found at http://www.illinoiscourts.gov/Forms/approved/procedures/
appearance.asp; and a credit card to pay any required fees.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

**Summons - Alias Summons** (12/01/20) CCG 0001 B

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www. illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

Please call or email the appropriate clerk's office location (on Page 3 of this summons) to get your court hearing date AND for information whether your hearing will be held by video conference or by telephone. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

**NOTE: Your appearance date is NOT a court date. It is the date that you have to file your completed appearance by. You may file your appearance form by efiling unless you are exempted.**

A court date will be set in the future and you will be notified by email (either to the email address that you used to register for efiling, or that you provided to the clerk's office).

**CONTACT THE CLERK'S OFFICE for information regarding COURT DATES by visiting our website: cookcountyclerkofcourt.org; download our mobile app from the AppStore or Google play, or contact the appropriate clerk's office location listed on Page 3.**

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

◉ Atty. No.: 56618
○ Pro Se 99500

Name: McGuire Law, P.C.

Atty. for (if applicable):

Plaintiff

Address: 55 W. Wacker Dr., 9th. Fl.

City: Chicago

State: IL   Zip: 60601

Telephone: (312) 893-7002

Primary Email: pgeske@mcgpc.com

Witness date _____

2/24/2023 6:57 PM IRIS Y. MARTINEZ

_____

IRIS Y. MARTINEZ, Clerk of Court

☐ Service by Certified Mail: _____

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 2 of 3

FILED DATE: 2/24/2023 6:57 PM 2023CH01872

FILED DATE: 2/24/2023 6:57 PM  2023CH01872

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION

**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5133

### CIVIL DIVISION

**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5116

### COUNTY DIVISION

**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION

**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6300

### DOMESTIC VIOLENCE

**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:    (312) 325-9500

### LAW DIVISION

**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5426

### PROBATE DIVISION

**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE

**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:    (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS

**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:    (847) 818-3000

### DISTRICT 4 - MAYWOOD

**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:    (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW

**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:    (708) 974-6500

### DISTRICT 6 - MARKHAM

**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:    (708) 232-4551

Hearing Date: 6/27/2023 9:15 AM
Location: Court Room 2508
Judge: Gamrath, Celia G

FILED
2/24/2023 6:57 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH01872
Calendar, 6
21622998

FILED DATE: 2/24/2023 6:57 PM    2023CH01872

**Chancery Division Civil Cover Sheet**
**General Chancery Section**                                    (12/01/20) CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

MICHAEL BLAKE, individually and on behalf of classes,

_____
                                      Plaintiff

                v.                                  Case No: _____

CELEBRITY HOME LOANS, LLC et al.

_____
                                      Defendant

### CHANCERY DIVISION CIVIL COVER SHEET
### GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

**Only one (1) case type may be checked with this cover sheet.**

| | | | | | |
|---|---|---|---|---|---|
| 0005 | ☐ Administrative Review | | 0017 | ☐ Mandamus |
| 0001 | ☑ Class Action | | 0018 | ☐ Ne Exeat |
| 0002 | ☐ Declaratory Judgment | | 0019 | ☐ Partition |
| 0004 | ☐ Injunction | | 0020 | ☐ Quiet Title |
| | | | 0021 | ☐ Quo Warranto |
| 0007 | ☐ General Chancery | | 0022 | ☐ Redemption Rights |
| 0010 | ☐ Accounting | | 0023 | ☐ Reformation of a Contract |
| 0011 | ☐ Arbitration | | 0024 | ☐ Rescission of a Contract |
| 0012 | ☐ Certiorari | | 0025 | ☐ Specific Performance |
| 0013 | ☐ Dissolution of Corporation | | 0026 | ☐ Trust Construction |
| 0014 | ☐ Dissolution of Partnership | | 0050 | ☐ Internet Take Down Action (Compromising Images) |
| 0015 | ☐ Equitable Lien | | | |
| 0016 | ☐ Interpleader | | | ☐ Other (specify) _____ |

◉ Atty. No.: 56618            ○ Pro Se 99500

Atty Name:  McGuire Law P.C.
_____

Atty. for:  Plaintiff
_____

Address:  55 West Wacker Dr., 9th Fl.
_____

City:  Chicago                    State:  IL

Zip:  60601

Telephone:  (312) 893-7002

Primary Email:  pgeske@mcgpc.com

Pro Se Only:   ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 1

**12-Person Jury**

Hearing Date: 6/27/2023 9:15 AM
Location: Court Room 2508
Judge: Gamrath, Celia G

FILED
2/24/2023 6:57 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH01872
Calendar, 6
21622998

FILED DATE: 2/24/2023 6:57 PM   2023CH01872

### CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |  |
|---|---|---|
| MICHAEL BLAKE, individually and on behalf of similarly situated individuals, | ) ) ) | |
| *Plaintiff,* | ) ) ) | No.  **2023CH01872** |
| v. | ) ) ) | |
| CELEBRITY HOME LOANS, LLC, an Illinois limited liability company; and CELEBRITY FINANCIAL, INC., a U.S. Virgin Islands corporation, | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| *Defendants.* | ) ) ) | |

### CLASS ACTION COMPLAINT

Plaintiff, Michael Blake, by and through his undersigned attorneys, brings this Class Action Complaint against Defendants, Celebrity Home Loans, LLC and Celebrity Financial, Inc. (collectively, "Celebrity" or "Defendants"), to seek redress for Defendants' violations of the federal Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. § 2101 *et seq.*, and their failure to timely pay full wages, commissions, and final compensation owed to Plaintiff and other similarly situated individuals in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.* Plaintiff alleges as follows based on personal knowledge as to his own acts and experiences, and as to all other matters, upon information and belief, including an investigation by his attorneys.

### NATURE OF THE ACTION

1.     This case arises out of Celebrity's callous decision to abruptly terminate hundreds of its employees without providing them with 60-days advance notice as required by the federal WARN Act, or timely payment of their full wages, commissions, and final compensation as

1

FILED DATE: 2/24/2023 6:57 PM   2023CH01872

required by the IWPCA.

2. On February 13, 2023—just three days prior to many employees' payday—Celebrity sent separation letters to approximately 92% of its workforce, informing them that they were being terminated that same day. Making matters worse, the letters also told employees that they would not be receiving timely compensation for the pay period prior to termination. For many, the outstanding pay included salaries, wages, and commissions earned during the entire month of January and first half of February. Nor would separated employees be receiving timely payment for accrued vacation time and other final compensation owed at the time of separation.

3. Celebrity's actions are not only unlawful under state and federal law, they are also unethical, unscrupulous, and have caused substantial harm to its many employees. Celebrity's sudden mass layoff is inconsistent with industry best-practices and lacks basic consideration for its employees.

4. As a result of Celebrity's failure to comply with the provisions of the WARN Act and the IWPCA, Plaintiff and Celebrity's other employees were denied their statutory right to formal notice as to when a mass layoff would occur. Celebrity's announcement that its employees were being terminated came without adequate advance warning and caused substantial disruption in the lives of Plaintiff and Celebrity's other employees.

5. Accordingly, Plaintiff brings this action to redress these harms and hold Celebrity accountable for violating the putative class members' rights under the WARN Act and the IWPCA. On his own behalf and on behalf of two classes of similarly situated individuals defined below, Plaintiff seeks recovery of all available actual, compensatory, and statutory damages, pre-judgment interest, as well as costs and reasonable attorneys' fees.

FILED DATE: 2/24/2023 6:57 PM 2023CH01872

## PARTIES

6. Plaintiff, Michael Blake, is a natural person and at all relevant times has been resident of Illinois.

7. Defendant Celebrity Home Loans, LLC ("CHL") is a limited liability company organized under the laws of Illinois and headquartered in Oakbrook Terrace, Illinois. CHL conducts business in Cook County, Illinois and elsewhere nationwide. CHL is a subsidiary of Defendant Celebrity Financial, Inc.

8. Defendant Celebrity Financial, Inc. ("CFI") is a for-profit corporation incorporated under the laws of the U.S. Virgin Islands and headquartered in St. Thomas, Virgin Islands. CFI is a managing member, parent, and owner of Defendant CHL. CFI maintains a substantial presence in Illinois, and a number of its high-level officers and employees live and work in Illinois.

9. At all times relevant to the claims in this matter, Defendant CFI managed and exercised complete control over its subsidiary, Defendant CHL, which acted as an agent on behalf of and within the course and scope of its agency with CFI.

10. Further, CFI was directly and actively engaged with CHL's management, such that it had a hands-on role with CHL's high-level policies and procedures and its daily operations. Indeed, CFI installed a number of its own directors and executives in key positions at CHL. For example, David Robnett, the Chairman and CEO of CFI, is also the CEO and a managing member of CHL. Scotty Pickle, the SVP of Finance at CFI, is also the CFO at CHL. Given the substantial overlap between the two entities, CFI and CHL shared joint authority over matters relating to the essential terms and conditions of the putative class members' employment, including decisions related to hiring and firing and employee compensation.

11. In short, CFI held complete control over the operation of CHL and installed its own

3

FILED DATE: 2/24/2023 6:57 PM   2023CH01872

directors and executives at CHL, including those in charge of daily operations, like staffing.

## JURISDICTION AND VENUE

12.     Pursuant to 735 ILCS 5/2-209(b), this Court has personal jurisdiction over Defendant CHL with respect to Plaintiff's and the other putative class members' claims, because CHL is organized under the laws of this state and headquartered within this state.

13.     This Court also has personal jurisdiction over Defendants pursuant to 735 ILCS 5/2-209(a), because Plaintiff's and the putative class members' claims arise out of or relate to Defendants' unlawful in-state actions, namely, Defendants' implementation of an unlawful mass layoff and their decision to unlawfully withhold commissions, wages, and final compensation owed to Plaintiff and the other putative class members. Further, Defendants are doing business within this state such that they have sufficient minimum contacts with Illinois and have purposefully availed themselves of Illinois markets to make it reasonable under the Illinois Constitution and Constitution of the United States for this Court to exercise personal jurisdiction over Defendants.

14.     Venue is proper in Cook County pursuant to 735 ILCS 5/2-101, because CHL maintains offices in Cook County and is doing business in Cook County, and thus resides in Cook County under 735 ILCS 5/2-102.

## ALLEGATIONS OF FACT COMMON TO ALL COUNTS

### *Background*

15.     Defendant CHL, formerly known as Midwest Equity Mortgage, is a home mortgage lender based in Oakbrook Terrace, Illinois.

16.     Since its inception in 2006, CHL has lent over $21 billion in home loans.[1] CHL

---

[1] https://celebrityhomeloans.com/about

4

reported approximately $5.9 billion in total mortgage origination volume for the 12 months ending December 1, 2022.

17. CHL is a subsidiary of CFI, and together they are licensed and jointly operate in at least 46 states under various brands and trade names.

18. In order to promote loans to prospective home buyers and other borrowers, Defendants jointly employed more than 300[2] loan officers, as well as numerous employees in other roles such as underwriters, processors, and administrative staff.

19. Defendants' loan officers, like Plaintiff, were primarily compensated through a baseline hourly wage plus commissions on loans they closed. The amount of the commissions depended on a number of factors such as number of loans closed, loan size, and the loans' interest rates. Commissions were generally paid on the 16th day each month.

***Celebrity's Mass Layoffs***

20. On or about February 7, 2023, Defendants held a conference call with employees, during which they announced an acquisition by On Q Financial, Inc. ("On Q"), an Arizona-based mortgage lender. The terms of the acquisition were not disclosed, but it purportedly involved On Q acquiring some or all of CHL's assets and production divisions.

21. To the surprise of many employees, Defendants also revealed during the same February 7, 2023 conference call that they would be furloughing approximately 75% of their staff that same day, with no date set for reinstatement. This call was the first time that many employees were informed of the possibility of a mass layoff. However, Defendants gave no explanation as to why the furloughs were necessary or why they had failed to give sufficient advance notice. A subsequent email sent to some employees stated that some were being furloughed immediately,

---

[2] https://www.housingwire.com/articles/struggling-mortgage-shop-celebrity-in-ma-talks-with-on-q-financial-sources/

FILED DATE: 2/24/2023 6:57 PM   2023CH01872

FILED DATE: 2/24/2023 6:57 PM   2023CH01872

while others would not be furloughed until February 27, 2023.

22.     On February 13, 2023, Defendants surprised their employees yet again when "separation" letters were emailed to approximately 92%[3] of Defendants' staff, informing them that they were being terminated immediately. A true and accurate copy of one such letter sent to Plaintiff is attached hereto as Exhibit 1.

23.     In the separation letters, Defendants stated that they were "notifying you [the employee] today that due to unanticipated events we must terminate your employment today (February 13, 2023) at 5pm EST."

24.     The separation letters also disclosed that the terminated employees would not be receiving timely compensation for salary, wages, commissions, or final compensation owed at the time of separation. Defendants stated that they were "unable to process our full payroll obligations on 2/16/2023. This means that [employees] will not receive compensation during this pay period. We understand the impacts this may have on you and your family, and we deeply apologize."

25.     Defendants nonetheless stated that they were "anticipating additional funds and believe this is only a timing issue with our sincere intent to provide you all compensation that is owed to you over the next several weeks."

26.     Defendants' employees were not the only ones caught off guard by the mass layoff—it was also a shock to Defendants' prospective buyer, On Q.

27.     In an interview with nationalmortgageprofessional.com, an executive at On Q Financial, Patrick Lamb, stated "that his company had no idea about the seemingly sudden liquidity issues that led to the furloughs and, a week later, the mass layoff by Celebrity Home Loans on Monday [February 13th], adding that On Q found out about the issues only after they

---

[3] https://nationalmortgageprofessional.com/news/celebrity-home-loans-cuts-92-its-staff

FILED DATE: 2/24/2023 6:57 PM   2023CH01872

occurred."[4]

28.    Mr. Lamb further stated that "the deal to acquire some of [Celebrity]'s assets ha[d] fallen apart," because "[t]here's nothing left to acquire" following the termination of nearly all of Defendants' staff.[5]

29.    On information and belief, Defendants' representation that employees were being terminated "due to unanticipated events" was false and misleading. Defendants and their executive officers knew for weeks if not months prior to sending separation letters in February 2023 that their financial conditions and the breakdown of negotiations with On Q could lead to a mass layoff and closure of Defendants' facilities.

### *Facts Specific to Plaintiff*

30.    Plaintiff began working for Defendants as a retail loan officer and full-time employee in or about 2018.

31.    According to the terms of Plaintiff's employment agreement with Defendants, Plaintiff was to be paid an hourly wage plus commissions based on loans closed. Commissions were to be paid monthly on or about the 16th day of each month and calculated based on loans closed during the month prior. A copy of an Addendum to Plaintiff's employment agreement outlining the formula for his compensation is attached hereto as Exhibit 2.

32.    On February 13, 2023 at 7:22 p.m. CST, Plaintiff unexpectedly received a separation letter from Defendants by email informing him that his employment was being terminated as of 5pm EST that same day, and that he would not receive compensation for the pay period leading up to his termination.

---

[4] https://nationalmortgageprofessional.com/news/q-financial-celebrity-home-loans-furloughs-layoffs-sank-deal
[5] https://www.housingwire.com/articles/on-q-financial-about-celebrity-theres-nothing-left-to-acquire/

FILED DATE: 2/24/2023 6:57 PM  2023CH01872

33.     Plaintiff did not receive any prior or subsequent written notice related to his termination other than the February 13, 2023 letter.

34.     At the time of his termination, Plaintiff had earned wages and commissions that were owed to him and scheduled to be paid on or about February 16, 2023. To date, however, Plaintiff has not received full payment of all outstanding wages and commissions. Plaintiff had also accrued paid time off and vacation days pursuant to his employment agreement for which he did not receive full payment.

35.     Plaintiff is not alone in his experiences, and hundreds of Defendants' other loan officers and other employees have had nearly identical experiences.

## CLASS ALLEGATIONS

36.     Pursuant to 735 ILCS 5/2-801, Plaintiff brings this action on his own behalf and on behalf of two classes defined as follows:

> **The WARN Act Class:** All individuals who were employed by Defendants and terminated in January or February 2023.

> **The IWPCA Class:** All current or former employees of Defendants who did not receive full compensation for wages, commissions, and/or other final compensation owed in February 2023 or thereafter.

37.     Excluded from the Classes are any members of the judiciary assigned to preside over this matter; any officer or director of Defendants; and any immediate family member of such officer or director.

38.     **Numerosity:** Upon information and belief, there are hundreds of members of the Classes, making the members of the Classes so numerous that joinder of all members is impracticable. Although the exact number of members of the Classes is unknown to Plaintiff, the members can easily be ascertained through Defendants' personnel records.

39.     **Typicality:** Plaintiff's claims are typical of the claims of the members of the

FILED DATE: 2/24/2023 6:57 PM   2023CH01872

Classes he seeks to represent because the factual and legal bases of Defendants' liability to Plaintiff and the other members of the Classes are the same, and because Defendants' conduct has resulted in similar injuries to Plaintiff and the other members of the Classes. As alleged herein, Plaintiff and the other members of the Classes have all suffered damages in the form of unpaid or underpaid wages, commissions, and final compensation as a result of Defendants' implementation of a mass layoff.

40.     **Commonality & Predominance:** There are many questions of law and fact common to Plaintiff and the other members of the Classes' claims, and those questions predominate over any questions that may affect individual members. Common questions for the Classes include, but are not limited to, the following:

a.     Whether Defendants' employment agreements with their employees are enforceable under the IWPCA;

b.     Whether Defendants owed wages and commissions to the IWPCA Class members at the time of their separation;

c.     Whether Defendants failed to timely pay full final compensation to separated employees;

d.     Whether Defendants' conduct violated the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.*

e.     Whether Plaintiff and the WARN Act Class suffered an "employment loss" as defined by the WARN Act;

f.     Whether Plaintiff and the WARN Act Class were "affected employees" as defined by the WARN Act;

g.     Whether Defendants failed to provide the notice required by the WARN Act;

h.     Whether Defendants' conduct violated the WARN Act; and

i.     Whether Plaintiff and the Classes are entitled to damages permitted under the WARN Act and the IWPCA.

FILED DATE: 2/24/2023 6:57 PM   2023CH01872

41.     **Fair and Efficient Adjudication:** A class action is an appropriate method for the fair and efficient adjudication of this controversy because absent a class action, most of the members of the Classes would find the cost of litigating their claims to be prohibitively expensive and would have no effective remedy. Further, the class treatment of the common questions of law and fact here is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

42.     **Fair & Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes he seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Classes.

43.     Defendants have acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making injunctive or corresponding declaratory relief appropriate for each Class as a whole.

**COUNT I**
**Violation of the federal Worker Adjustment and Retraining Notification Act**
**("WARN Act"), 29 U.S.C. § 2101 *et seq.***
**(on behalf of Plaintiff and the other members of the Class)**

44.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 - 35 as though fully set forth herein.

45.     The WARN Act generally requires that certain employers give employees 60-days advance notice of plant closings or mass layoffs.

FILED DATE: 2/24/2023 6:57 PM   2023CH01872

46. Defendants are employers subject to the WARN Act under Section 2101(a)(1).

47. The terminations effectuated in or about February 2023 constitute a "mass layoff" within the meaning of Section 2101(a)(3) the WARN Act, because they affected at least 50 full-time employees and more than 33% of Defendants' workforce.

48. Alternatively, the closure of Defendants' Oakbrook Terrace office constitutes a "plant closing" within the meaning of the WARN Act, because it is a single site of employment, the shutdown of which resulted in the employment loss of more than 50 full-time employees.

49. Plaintiff and the other members of the WARN Act Class are "affected employees" within the meaning of the WARN Act because, as employees of Defendants, they were reasonably expected to experience an employment loss as a result of Defendants' mass layoff and/or plant closing.

50. Plaintiff and the other WARN Act Class members are aggrieved employees because they did not receive the 60 days advance notice of a plant closing and/or mass layoff required under Section 2102 of the WARN Act.

51. Defendants willfully violated the WARN Act because they knew, and have known for months, that they would need to carry out a plant closing or mass layoff for financial reasons, but they did not give adequate notice of the expected or anticipated date of closure or layoffs.

52. Pursuant to Section 2104(a) of the WARN Act, Defendants are liable to Plaintiff and the other members of the WARN Act Class for back pay and benefits in an amount to be determined at trial.

53. WHEREFORE, Plaintiff prays for the relief set forth below.

FILED DATE: 2/24/2023 6:57 PM   2023CH01872

## COUNT II
**Violation of Illinois Wage and Payment Collection Act (IWPCA), 820 ILCS 115/1, *et seq.*
(on behalf of Plaintiff and the other members of the Class)**

54.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 - 35 as though fully set forth herein.

55.     Plaintiff and the other IWPCA Class members are "employees" as defined in the IWPCA, and Defendants are jointly their "employer" as defined in the IWPCA. 820 ILCS 115/2.

56.     Under the IWPCA, an employer is required to pay commissions to its employees at least monthly. *Id.* § 3.

57.     Further, employers must pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employees. *Id.* § 5.

58.     As explained above, Defendants failed to timely pay Plaintiff and the other IWPCA Class members all earned wages, commissions, and final compensation they were owed at the time of their separation.

59.     Defendants have no legal basis for its refusal to pay Plaintiff and the other Class members the compensation they have earned and which is due and owing to them. Defendants' refusal to pay Plaintiff and the other IWPCA Class members all amounts due and owing to them is vexatious, harassing, and in bad faith.

60.     As a direct and proximate result of Defendants' conduct and violations of the IWPCA, Plaintiff and the other IWPCA Class members have suffered actual harm in the form of actual monetary damages, pecuniary losses, and other harms in an amount to be proven at trial.

61.     Pursuant to Section 14(a) of the IWPCA, any employee not timely paid wages, final compensation, or wage supplements by his or her employer shall be entitled to an award of

FILED DATE: 2/24/2023 6:57 PM    2023CH01872

damages equal to the amount of any such underpayments along with damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid, plus an award of costs and all reasonable attorney's fees. 820 ILCS 115/14(a).

62.    WHEREFORE, Plaintiff prays for the relief set forth below.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the other members of the Classes, prays for the following relief:

A.    An order certifying the Classes proposed above and appointing Plaintiff as Class representative and the undersigned counsel as Class counsel;

B.    A declaration that Defendants violated the WARN Act and the IWPCA;

C.    An award of damages to the WARN Act Class members equal to the amount of any back pay and any benefits recoverable under Section 2104(a)(1) of the WARN Act;

D.    An award of damages to the IWPCA Class members equal to the amount of any unpaid or underpaid wages, salary, commissions, and final compensation along with damages of 5% of the amount of any such underpayments for each month during which such underpayments remain unpaid;

E.    An award of reasonable attorneys' fees, expenses, and costs;

F.    Prejudgment interest;

G.    Such preliminary and other injunctive, equitable, or declaratory relief as the Court deems appropriate; and

H.    Such further and additional relief as the Court deems reasonable and just.

FILED DATE: 2/24/2023 6:57 PM 2023CH01872

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 24, 2023

Respectfully submitted:

MICHAEL BLAKE, individually and on
behalf of a class of similarly situated
individuals

By: */s/ Paul T. Geske*
One of Plaintiff's Attorneys

Myles McGuire
Paul T. Geske
Joseph Dunklin
MCGUIRE LAW, P.C. (Firm ID#56618)
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
pgeske@mcgpc.com
jdunklin@mcgpc.com

*Attorneys for Plaintiff and the putative
classes*

14

FILED DATE: 2/24/2023 6:57 PM    2023CH01872

# Exhibit 1

FILED DATE: 2/24/2023 6:57 PM   2023CH01872

February 13, 2023



Dear Michael:

We are notifying you today that due to unanticipated events we must terminate your employment today (February 13, 2023) at 5pm EST. In addition, we are unable to process our full payroll obligations on 2/16/2023. This means that you will not receive compensation during this pay period. We understand the impacts this may have on you and your family, and we deeply apologize. During this period, you may qualify for a hardship withdrawal or loan from your 401k. Please contact ADP for additional information by logging in to www.MyADP.com or calling 1-866-695-7526.

In addition, our EAP program also offers resources and programs to help you. For more information visit www.guidanceresources.com (username LFGSupport, password LFGSupport1) or call 1-888-628-4824. We are anticipating additional funds and believe this is only a timing issue with our sincere intent to provide you all compensation that is owed to you over the next several weeks. We would also recommend that you submit any outstanding healthcare claims as soon as possible to avoid any interruptions in coverage.

If you have any additional questions, please contact askhr@celebrityhomeloans.com.


Sincerely,

Celebrity Home Loans, LLC

FILED DATE: 2/24/2023 6:57 PM   2023CH01872

# Exhibit 2

# Retail Loan Officer Employment Agreement

## ADDENDUM A

Retail Loan Officer: __Michael Bernard Blake Jr__          Effective Date: __February 1, 2023__

| Compensation Tiers Rate Table Generated Lead* | | | Compensation Caps |
|---|---|---|---|
| Refinance Loan | 25 | Basis Points (min. $750) | $1,500 |
| Purchase Loan Tiers: | | | |
| 1 to 3 Units | 30 | Basis Points | $3,000 |
| 4 to 6 Units | 40 | Basis Points | $3,000 |
| 7 + Units | 50 | Basis Points | $3,000 |
| Rate Table Repeat Lead | 75 | Basis Points | $3,000 |
| Non-Rate Table Generated Lead** | | | |
| 1 - 3 Units | 50 | Basis Points | $4,000 |
| 4 - 6 Units | 75 | Basis Points | $4,000 |
| 7+ Units | 85 | Basis Points | $4,000 |
| Self-Generated/Repeat*** | 115 | Basis Points | $4,000 |
| Brokered Loan**** | 75 | Basis Points | $3,000 |

1. Hourly Rate of Pay: Employee will be paid the state prevailing minimum wage* per hour worked payable in semimonthly installments on or around the 1st and 16th of each month. Employee will additionally be paid any overtime worked at one and a half times his/her hourly rate of pay. Base pay will not include any overtime pay Employee receives. Employee's Base Pay will be deducted from any commissions Employee is eligible to receive that pay period pursuant to paragraph 2 below. In the event Employee's Base Pay for the pay period exceeds the Employee's commission for the pay period, any negative balance will be carried over and applied against the calculation of future commissions. Employee is not and will not be held responsible for negative balances except to the extent that his/her commissions can be reduced. Under no circumstance, and at no time during or after employment, will Employee be required or expected to re-pay the Company beyond and/or except as per the deductions from commission described herein.

2. Commission: On or around the 1st and 16th of each month, Employee will be eligible to receive commissions based upon closed and funded loan production the prior month, subject to the terms of the Employment Agreement and the terms of this Addendum A. Any commissions paid on or around the 1st will be based upon loan production closed and funded the 1st through 15th the prior month. Any commissions paid on or around the 16th will be based upon loan production closed and funded the 16th through the end of the prior month. Employee will be paid in commissions the basis points designated above based upon the production volume minus the Base Pay and any carry-over negative balance applicable for that pay period. Employee compensation will not vary depending on whether a loan locks or closes at, above, or below the Base Price set by Company for Employee.

3. All Commission is Advanced: Employee is only considered to have earned and be entitled to payment of commission on loans once they have been sold on the secondary market and the period for any early payment default and early pay off period has expired. Notwithstanding, the Company is advancing the commission on loans once they have been closed and funded under Employee's supervision as detailed in Paragraph 2. In the event such commission is advanced, but is later deemed un-earnable as a result of failure to sell, a repurchase demand, an early payment default or early payoff period, the amounts advanced will be subtracted from Employee's net commission in calculating any unearned commission not yet paid to Employee. No payment will be advanced, nor commission paid on loans that Employee did not originate, or that were not closed while under Employee's authorized supervision. The limited exception to this is detailed in Article III of the Employment Agreement. It is understood that Employee is not entitled to commission simply for procuring a loan.

4. Prospective Compensation Adjustments: Employee's compensation may not be adjusted more than once in any three (3)-month period. The Company may review and, in its sole discretion, amend Employee's compensation and the terms of this Addendum A) after the Employee's initial ninety (90) days of employment with Company, and then as often as once in a three (3) month period. However, the Company contemplates that as a matter of course compensation will not be adjusted that regularly absent reason. For example, Employee's compensation will be subject to review for an adjustment

Scanned with CamScanner

# Retail Loan Officer Employment Agreement

if (i) s/he requests a compensation review; (ii) there are losses associated with epds, epos, repurchases, or unsalable loans; (iii) Employee has not met minimum production volumes; (iv) Employee is found to have breached his/her employment agreement or violated a written Company policy; or (v) the branch Employee is associated with cannot support Employee's existing compensation structure. In the event an Employee's compensation is evaluated for adjustment, a variety of criteria including pull through rate, quality of loan files, loan volume, seniority, overall sources of origination, loan performance, any relevant competitive forces impacting Employee's customer base, and any relevant macroeconomic trends will be reviewed. Notwithstanding the foregoing, the Company can adjust the compensation levels at any time in the event it determines that that it is required to do so to enable the production center to operate profitably, to comply with state and or federal requirements, or economic conditions require overall changes to compensation or pricing. In addition, Employee's commission rate can be adjusted or suspended at any time if the Company has reason to believe that (i) Employee has breached his fiduciary duty or obligation to the Company; (ii) Employee has violated any law, policy, procedure or acted improperly in regard to the Company or in any transaction with a consumer; or (iii) Employee is engaged in self-dealing, acting purely in his/her own pecuniary interest without regard to and inconsistent with the interests of the Company and/or the consumer.

5. Closed Loan: As defined herein, a loan is not closed unless and until the loan has gone through closing, all monies have funded, all rescission periods have expired, and all proper documentation has been filed and prepared in accordance with TILA/RESPA.

6. Piggyback Second Mortgages: Compensation is not paid on piggyback second mortgages whether the loan is funded by Company or brokered by Company. A piggyback second mortgage is a mortgage in a subordinated lien position which is consummated at the same time as the first mortgage. Due to the higher risk associated with 2nd lien loans, piggyback second mortgaged should only be originated as necessary to facilitate a better overall loan structure for the borrower. It's Company's policy to originate 1st lien loans whenever practical to do so.

7. Disputes: Employee agrees that within 30 days of the receipt of any payment of commissions, s/he will bring to Employer's attention, in writing, any and all objections, disputes, or concerns regarding omissions or errors in connection with commissions paid. Employee understands that if no such written dispute is initiated, Employee's silence constitutes an acknowledgement that commissions were properly calculated and paid.

\* Should the applicable state's minimum wage increase, the Company will automatically adjust Employee's hourly pay rate accordingly.

**Source Definitions:**

- A self-generated loan is defined as a loan or lead resulting from: loan officer cold calling potential customers; marketing efforts paid for by the loan officer; loan officer meeting a customer at non-Company sponsored events; referrals from real estate agents with which a loan officer has established a relationship; past client referrals of new business; and referrals from family and friends.

- A lead-generated loan is defined as a loan resulting from Celebrity Home Loans' marketing efforts.

- Branch Referral is defined as a loan referred into the branch and distributed to a licensed loan originator.

- Brokered Loan is defined as any loan the CHL does not fund.

- Return Client is refinance or purchase being completed for a past client.

- Co-origination occurs when a loan file is completed in an arrangement between two licensed Loan Officer. Both Loan Officers must be licensed in the applicable state the property resides in.

**Signature:** *mike blake*
mike blake (Feb 1, 2023 08:24 CST)
**Email:** ████@eclicklending.com

**Signature:** AA
**Email:** tony@midwestequity.com

Scanned with CamScanner

FILED
2/27/2023 4:30 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH01872
Calendar, 6
21642992

**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

MICHAEL BLAKE, individually and on )
behalf of similarly situated individuals, )
                                    )
       *Plaintiff,* )         No. 2023-CH-01872
                                     )
            v. )         Hon. Celia G. Gamrath
                                       )
CELEBRITY HOME LOANS, LLC, an )       Calendar 6
Illinois limited liability company; and )
CELEBRITY FINANCIAL, INC., a U.S. )
Virgin Islands corporation, )
                                       )
       *Defendants.* )
                                       )

## <u>NOTICE OF MOTION</u>

To:    Celebrity Home Loans, LLC
        c/o Illinois Corporation Service Company
        801 Adlai Stevenson Drive
        Springfield, IL 62703

        Celebrity Financial, Inc.
        c/o Marjorie Rawls Roberts, P.C.
        5093 Dronningens Gade, Ste. 1
        St. Thomas, VI 00802

PLEASE TAKE NOTICE that on June 27, 2023 at 9:15 a.m., or as soon thereafter as this

matter may be heard, counsel for Plaintiff shall appear before the Honorable Celia G. Gamrath, or

any other judge sitting in that judge's stead, in courtroom 2508 at the Richard J. Daley Center, 50

W. Washington St., Chicago, Illinois, and present *Plaintiff's Motion for Class Certification or,*

*Alternatively, for a Deferred Class Certification Ruling Pending Discovery*, a copy of which is

attached hereto and herby served upon you. Pursuant to the Court's Standing Order, the hearing

may be conducted remotely via Zoom. The Parties may use the following Zoom meeting info to

appear remotely:

FILED DATE: 2/27/2023 4:30 PM  2023CH01872

- 1 -

FILED DATE: 2/27/2023 4:30 PM   2023CH01872

**Zoom Meeting ID:** 928 4730 2982
**Zoom Meeting Password:** 411367
**Zoom Call-in Number:** (312) 626-6799
**Calendar 6 Email:** ccc.chancerycalendar6@cookcountyil.gov
**Calendar 6 Tel.:** (312) 603-4890

Dated: February 27, 2023

Respectfully submitted,

MICHAEL BLAKE, individually and on
behalf of similarly situated individuals

By: /s/ *Paul T. Geske*
One of Plaintiff's Attorneys

Myles McGuire
Paul T. Geske
Joseph Dunklin
MCGUIRE LAW, P.C. (#56618)
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
pgeske@mcgpc.com
jdunklin@mcgpc.com

*Attorneys for Plaintiff and the putative
classes*

- 2 -

FILED DATE: 2/27/2023 4:30 PM   2023CH01872

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on February 27, 2023, or as soon thereafter as service may be effectuated, a copy of the foregoing *Notice of Motion* as well as the accompanying *Motion* and *Memorandum of Law* being filed herewith were served on Defendants via their respective registered agents by special process server at the addresses below:

Celebrity Home Loans, LLC
c/o Illinois Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

Celebrity Financial, Inc.
c/o Marjorie Rawls Roberts, P.C.
5093 Dronningens Gade, Ste. 1
St. Thomas, VI 00802

Under penalties as provided by law, pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in the above certificate of service are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

/s/ *Paul T. Geske*
Paul T. Geske

- 3 -

FILED
2/27/2023 4:30 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH01872
Calendar, 6
21642992

**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

MICHAEL BLAKE, individually and on )
behalf of similarly situated individuals, )
)
    *Plaintiff,* )    No. 2023-CH-01872
)
         v. )    Hon. Celia G. Gamrath
)
CELEBRITY HOME LOANS, LLC, an )    Calendar 6
Illinois limited liability company; and )
CELEBRITY FINANCIAL, INC., a U.S. )
Virgin Islands corporation, )
)
    *Defendants.* )
_____ )

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION OR, ALTERNATIVELY,**
**FOR A DEFERRED CLASS CERTIFICATION RULING PENDING DISCOVERY**

Plaintiff, Michael Blake, by and through his undersigned attorneys, and pursuant to 735

ILCS 5/2-801, moves for entry of an order certifying the Class proposed below, appointing

Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel.

Alternatively, Plaintiff requests, to the extent the Court determines further evidence is necessary

to prove any element of Section 2-801, that the Court defer consideration of this Motion pending

a reasonable period to complete class discovery. *See, e.g., Ballard RN Center, Inc. v. Kohll's*

*Pharmacy & Homecare, Inc.*, 2015 IL 118644, ¶¶ 42-43 (citing *Damasco v. Clearwire Corp.*, 662

F.3d 891, 896–97 (7th Cir. 2011)). In support of his Motion, Plaintiff submits the following

Memorandum of Law.

Dated: February 27, 2023        Respectfully submitted,

                        MICHAEL BLAKE, individually and on behalf of
                        similarly situated individuals

                        By: */s/ Paul T. Geske*
                        One of Plaintiff's Attorneys

FILED DATE: 2/27/2023 4:30 PM  2023CH01872

FILED DATE: 2/27/2023 4:30 PM    2023CH01872

Myles McGuire
Paul T. Geske
Joseph Dunklin
MCGUIRE LAW, P.C. (#56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
pgeske@mcgpc.com
jdunklin@mcgpc.com

*Attorneys for Plaintiff and the putative classes*

FILED DATE: 2/27/2023 4:30 PM   2023CH01872

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION OR, ALTERNATIVELY, FOR
A DEFERRED CLASS CERTIFICATION RULING PENDING DISCOVERY**

## I.  INTRODUCTION

Plaintiff moves for certification of two classes of individuals who seek damages and equitable relief from Defendants, Celebrity Home Loans, LLC and Celebrity Financial, Inc. (collectively, "Celebrity" or "Defendants"). In this action, Plaintiff asserts claims under the federal Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. § 2101 *et seq.*, and the Illinois Wage and Payment Collection Act, 820 ILCS 115/1, *et seq.*, on behalf of two classes of former Celebrity employees harmed by Defendants' unlawful mass layoffs. Plaintiff's Class Action Complaint establishes that Plaintiff and the other members of the Classes have all suffered damages and other harms as a result of Defendants' failure to provide 60-days advance notice prior to conducting a mass layoff as required by the WARN Act, and their failure to timely pay full wages, commissions, and final compensation owed to Plaintiff and other similarly situated employees in violation of the IWPCA. As explained in detail below, class action treatment of these claims is proper.

## II.  FACTUAL BACKGROUND

This case arises out of Celebrity's callous decision to abruptly terminate hundreds of its employees without providing them with 60-days advance notice as required by the federal WARN Act, or timely payment of their full wages, commissions, and final compensation as required by the IWPCA. (Plaintiff's Class Action Complaint ¶ 1, hereinafter the "Complaint" or "Compl."). On February 13, 2023—just three days prior to many employees' payday—Celebrity sent separation letters to approximately 92% of its workforce, informing them that they were being terminated that same day. (*Id.* ¶ 2). The letters stated, in relevant part, that Defendants were

"notifying you [the employee] today that due to unanticipated events we must terminate your employment today (February 13, 2023) at 5pm EST." (*Id.* ¶ 23).

Making matters worse, the letters also told employees that they would not be receiving timely compensation for the pay period prior to termination. (*Id.* ¶ 2). Defendants stated that they were "unable to process our full payroll obligations on 2/16/2023. This means that [employees] will not receive compensation during this pay period. We understand the impacts this may have on you and your family, and we deeply apologize." (*Id.* ¶ 24) For many, the outstanding pay included salaries, wages, and commissions earned during the entire month of January and first half of February. (*Id.* ¶ 2). Nor would separated employees be receiving timely payment for accrued vacation time and other final compensation owed at the time of separation. (*Id.*)

As a result of Celebrity's failure to comply with the provisions of the WARN Act and the IWPCA, Plaintiff and Celebrity's other employees were denied their statutory right to formal notice as to when a mass layoff would occur. (*Id.* ¶ 4). Celebrity's announcement that its employees were being terminated came without adequate advance warning and caused substantial disruption in the lives of Plaintiff and Celebrity's other employees. (*Id.*).

Celebrity's actions are unlawful under state and federal law, and have caused substantial harm to its many employees. (*Id.* ¶ 3). Accordingly, Plaintiff brings this action to redress these harms and hold Celebrity accountable for violating the putative class members' rights under the WARN Act and the IWPCA. (*Id.* ¶ 5). On his own behalf and on behalf of two classes of similarly situated individuals defined below, Plaintiff seeks recovery of all available actual, compensatory, and statutory damages, pre-judgment interest, as well as costs and reasonable attorneys' fees.

FILED DATE: 2/27/2023 4:30 PM   2023CH01872

## III.    LEGAL & REGULATORY BACKGROUND

### A.    The Illinois Wage and Payment Collection Act.

The IWPCA is a remedial statute that "provide[s] employees with a cause of action for the timely and complete payment of earned wages or final compensation, without retaliation from employers." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016) (quoting *Byung Moo Soh v. Target Mktg. Sys., Inc.*, 353 Ill. App. 3d 126, 129 (1st Dist. 2004)). The IWPCA imposes a variety of wage-related obligations on employers, such as paying employees within certain time periods. Under the Wage Act, an employer is required to pay all wages earned by an employee during a semi-monthly or bi-weekly pay period no later than 13 days after the end of the pay period in which such wages were earned. 820 ILCS 115/4. Commissions may be paid once a month. 820 ILCS 115/3. Further, an employer shall pay the final compensation of separated employees in full, at the time of separation or no later than the next regularly scheduled payday. 820 ILCS 115/5.

If an employee does not receive timely compensation in violation of the IWPCA, they are entitled to file an action seeking recovery of "the amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid," in addition to "recover[y of] costs and all reasonable attorney's fees." *Id.* § 14.

### B.    The Federal WARN Act.

Recognizing the need to protect workers from being "needlessly left without work because of plant closings or layoffs"—and especially from being left "without sufficient opportunity to prepare for a period of unemployment and job transition"—the WARN Act requires employers to give employees two months' notice of plant closings and mass layoffs. *See* 134 Cong. Rec. E2463-02. Thus, the WARN Act makes it unlawful for any "employer" to "order a plant closing or mass

- 5 -

layoff until the end of a 60-day period after the employer serves written notice of such an order (1) to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee; and (2) to the State or entity designated by the State . . . , and the chief elected official of the unit of local government within which such closing or layoff is to occur[.]" *See generally*, 29 U.S.C.A. §§ 2101, 2102.

To enforce the statute, the WARN Act provides a civil private right of action to each affected employee and allows affected employees to collect damages in the amount of: "(A) back pay for each day of violation at a rate of compensation not less than the higher of--(i) the average regular rate received by such employee during the last 3 years of the employee's employment; or (ii) the final regular rate received by such employee; and (B) benefits under an employee benefit plan described in section 1002(3) of this title, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred." 29 U.S.C.A. § 2104(a)(1)(A)-(B).

## IV.    **PLAINTIFF'S PROPOSED CLASSES**

Pursuant to 735 ILCS 5/2-801, Plaintiff seeks certification of two classes defined as follows:

> **The WARN Act Class:** All individuals who were employed by Defendants and terminated in January or February 2023.

> **The IWPCA Class:** All current or former employees of Defendants who did not receive full compensation for wages, commissions, and/or other final compensation owed in February 2023 or thereafter.

(Compl. ¶ 36). As explained below, the proposed Classes satisfy each of the four requirements for certification under Section 2-801 of the Illinois Code of Civil Procedure: numerosity, commonality, adequacy of representation, and fair and efficient adjudication. A class action is not just appropriate here, it is also the only way that the members of the putative Classes can obtain

FILED DATE: 2/27/2023 4:30 PM   2023CH01872

appropriate full redress for Defendants' unlawful conduct.

## V. ARGUMENT

### A. Legal Standard for Class Certification.

To obtain class certification, it is not necessary for a plaintiff to establish that he or she will prevail on the merits of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (internal quotation marks and citation omitted)). As such, in determining whether to certify a proposed class, the Court should accept the allegations of the complaint as true. *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (1st Dist. 2007).

To proceed with a class action, the movant must satisfy the prerequisites for the maintenance of a class action set forth in Section 2-801 of the Illinois Code of Civil Procedure, which provides:

> An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:
>
> (1) The class is so numerous that joinder of all members is impracticable.
>
> (2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.
>
> (3) The representative parties will fairly and adequately protect the interest of the class.
>
> (4) The class action is an appropriate method for the fair and efficient adjudication of the controversy.

735 ILCS 5/2-801. As demonstrated below, Plaintiff's proposed Classes readily meet each one of these prerequisites, and the Court should therefore certify the proposed Classes.

FILED DATE: 2/27/2023 4:30 PM 2023CH01872

FILED DATE: 2/27/2023 4:30 PM   2023CH01872

Section 2-801 is modeled after Rule 23 of the Federal Rules of Civil Procedure and "federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 125 (2005). Circuit courts have broad discretion in determining whether a proposed class meets the requirements for certification and ought to err in favor of maintaining class certification. *Ramirez*, 378 Ill. App. 3d at 53. While a court may rule on class certification without requiring further discovery, *see Manual for Complex Litigation (Fourth)* § 21.14, at 255 (2004), courts have held that discovery is often necessary prior to addressing a motion for class certification. *See, e.g., Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, at ¶ 42 ("If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.") (quoting *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011)).

All the prerequisites for class certification are satisfied here, even though Plaintiff has not yet had an opportunity to engage in and complete discovery. However, in the interests of establishing a more fully developed record before ruling on class certification issues, it would be appropriate for the Court to defer ruling on this Motion pending the completion of discovery and submission of supplemental briefing.

## B.     The Numerosity Requirement is Satisfied.

The first step in certifying a class is a showing that "the class is so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). This requirement is met when "join[ing] such a large number of plaintiffs in a single suit would render the suit unmanageable and, in contrast, multiple separate claims would be an imposition on the litigants and the courts." *Gordon v. Boden*, 224 Ill. App. 3d 195, 200 (1st Dist. 1991) (citing *Steinberg v. Chicago Med. Sch.*, 69

FILED DATE: 2/27/2023 4:30 PM 2023CH01872

Ill.2d 320, 337 (Ill. 1977)). To satisfy this requirement, a plaintiff need not demonstrate the exact number of class members, but must offer a good faith estimate as to the size of the class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).

Because definitive evidence of numerosity can only come from the records of Defendants and their agents, it is proper to rely upon the allegations of the Complaint in certifying the Class. *See 2 A. Conte & H. Newberg, Newberg on Class Actions* § 7.20, at 66 (stating that where numerosity information is in the sole possession of the party opposing the class, courts generally rely on the complaint as prima facie evidence or defer ruling). Here, Plaintiff alleges that there are hundreds of members of the Classes. (Compl. ¶¶ 1, 18, 38). Defendants employed hundreds of commissioned loan officers and other employees during the applicable limitations period—an amount that more than satisfies the numerosity requirement. (*Id.*); *see Kulins v. Malco, A Microdot Co., Inc.*, 121 Ill. App. 3d 520, 529 (1st. Dist. 1984) (finding that, in Cook County, 30 class members is sufficient to satisfy numerosity). Additionally, the members of the putative Classes can be easily and objectively determined from Defendants' records.

Finally, it would be completely impracticable to join the claims of the members of the Class, because they are disbursed throughout Illinois, and because absent a class action, few members could afford to bring an individual lawsuit over the amounts at issue in this case, since each individual member's claim is relatively small. *See Gordon*, 224 Ill. App. 3d at 200. Accordingly, the first prerequisite for class certification is met.

### C. Common Questions of Law and Fact Predominate.

The second requirement of Section 2-801(2) is met where there are "questions of fact or law common to the class" and those questions "predominate over any questions affecting only individual members." 735 ILCS 5/2-801(2). Such common questions of law or fact exist when the

members of the proposed class have been aggrieved by the same or similar misconduct. *See Miner v. Gillette Co.,* 87 Ill. 2d 7, 19 (Ill. 1981); *Steinberg,* 69 Ill. 2d at 342. These common questions must also predominate over any issues affecting individual class members. *See O-Kay Shoes, Inc. v. Rosewell*, 129 Ill. App. 3d 405, 408 (1st Dist. 1984).

Here, the claims of the members of the Classes arise out of the same activity by Defendants, are based on the same legal theories, and implicate, among others, the following common issues: whether Defendants' employment agreements with their employees are enforceable under the IWPCA; whether Defendants owed wages and commissions to the IWPCA Class members at the time of their separation; whether Defendants failed to timely pay full final compensation to separated employees; whether Defendants' conduct violated the IWPCA; whether Plaintiff and the WARN Act Class suffered an "employment loss" as defined by the WARN Act; whether Plaintiff and the WARN Act Class were "affected employees" as defined by the WARN Act; whether Defendants failed to provide the notice required by the WARN Act; whether Defendants' conduct violated the WARN Act; and whether Plaintiff and the Classes are entitled to damages permitted under the WARN Act and the IWPCA.

(Compl. ¶ 40).

As alleged, and as will be shown through discovery, Defendants engaged in a common course of conduct by wrongfully carrying out a mass layoff and failing to timely pay their employees all outstanding wages, salaries, commissions, and final compensation owed at the time of separation. Any potential individualized issues remaining after common issues are decided would be *de minimis*. Accordingly, common issues of fact and law predominate over any individual issues, and Plaintiff has satisfied this hurdle to certification.

FILED DATE: 2/27/2023 4:30 PM   2023CH01872

- 10 -

FILED DATE: 2/27/2023 4:30 PM   2023CH01872

**D.      Adequate Representation.**

The third prong of Section 2-801 requires that "[t]he representative parties will fairly and adequately protect the interest of the class." 735 ILCS 5/2-801(3). The class representative's interests must be generally aligned with those of the class members, and class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *See Miner*, 87 Ill. 2d at 14; *see also Eshaghi v. Hanley Dawson Cadillac Co., Inc.*, 214 Ill. App. 3d 995, 1000 (1st Dist. 1991). The purpose of this adequacy of representation requirement is "to ensure that all Class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988).

In this case, Plaintiff has the exact same interest as the members of the proposed Class. Plaintiff has alleged that, like the other members of the Classes, he was terminated as part of Defendants' mass layoff and has not been paid his duly earned and owed commissions and final compensation. Plaintiff has also alleged that Defendants conduct violated his and the other members of the Classes' rights under the WARN Act and IWPCA.

Plaintiff's pursuit of this matter against Defendants demonstrates that he will be a zealous advocate for the Class. Further, proposed class counsel has regularly engaged in complex class action litigation in state and federal courts and has been appointed as class counsel in numerous class actions. (*See* Declaration of Paul T. Geske, attached hereto). Accordingly, the proposed class representative and proposed class counsel will adequately protect the interests of the members of the Class, thus satisfying Section 2-801(3).

**E.      Fair and Efficient Adjudication of the Controversy.**

The final requirement for class certification under 5/2-801 is met where "the class action

is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). "In applying this prerequisite, a court considers whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill. App. 3d at 203. In practice, a "holding that the first three prerequisites of section 2-801 are established makes it evident that the fourth requirement is fulfilled." *Gordon*, 224 Ill. App. 3d at 204; *Purcell & Wardrope Chtd.*, 175 Ill. App. 3d at 1079 ("The predominance of common issues [may] make a class action . . . a fair and efficient method to resolve the dispute."). Because numerosity, commonality and predominance, and adequacy of representation are satisfied here, it is "evident" that the appropriateness requirement is met as well.

Other considerations further support certification in this case. A "controlling factor in many cases is that the class action is the only practical means for class members to receive redress." *Gordon*, 586 N.E.2d at 467; *Eshaghi*, 574 N.E.2d at 766 ("In a large and impersonal society, class actions are often the last barricade of...protection."). A class action is superior to multiple individual actions "where the costs of litigation are high, the likely recovery is limited" and individuals are unlikely to prosecute individual claims absent the cost-sharing efficiencies of a class action. *Maxwell*, 2004 WL 719278, at *6. Here, absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive, and multiple individual actions would be judicially inefficient. *Id.*

Certification of the proposed Classes is necessary to ensure that Plaintiff and the members of the Classes are compensated for unpaid wages, commissions, salaries, and final compensation. Were this case not to proceed on a class-wide basis, it is unlikely that any significant number of Class members would be able to obtain redress from Defendants. Thus, proceeding as a class action

FILED DATE: 2/27/2023 4:30 PM    2023CH01872

here is an appropriate method to fairly and efficiently adjudicate the controversy.

## VI.     **CONCLUSION**

For the reasons set forth above, the requirements of 735 ILCS 5/2-801 are satisfied. Plaintiff therefore respectfully requests that the Court enter an order certifying the proposed Classes, appointing Plaintiff as Class Representative, appointing McGuire Law, P.C. as Class Counsel, and awarding such additional relief as the Court deems reasonable. In the alternative, to the extent the Court determines further evidence is necessary to prove any element of Section 2-801, Plaintiff requests that the Court defer consideration of this Motion and allow supplemental briefing following a reasonable period to complete class discovery.

Dated: February 27, 2023                    Respectfully submitted,

MICHAEL BLAKE, individually and on behalf of
similarly situated individuals

By: /s/ *Paul T. Geske*
One of Plaintiff's Attorneys

Myles McGuire
Paul T. Geske
Joseph Dunklin
MCGUIRE LAW, P.C. (#56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
pgeske@mcgpc.com
jdunklin@mcgpc.com

*Attorneys for Plaintiff and the putative classes*

FILED DATE: 2/27/2023 4:30 PM   2023CH01872

FILED DATE: 2/27/2023 4:30 PM   2023CH01872

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that February 27, 2023, or as soon thereafter as service may be effectuated, a copy of the foregoing *Plaintiff's Motion for Class Certification or, Alternatively, for a Deferred Class Certification Ruling Pending Discovery* was served on Defendants via their respective registered agents by special process server at the addresses below:

Celebrity Home Loans, LLC
c/o Illinois Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

Celebrity Financial, Inc.
c/o Marjorie Rawls Roberts, P.C.
5093 Dronningens Gade, Ste. 1
St. Thomas, VI 00802

Under penalties as provided by law, pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in the above certificate of service are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

/s/ *Paul T. Geske*
Paul T. Geske

- 1 -

FILED DATE: 2/27/2023 4:30 PM   2023CH01872

**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| MICHAEL BLAKE, individually and on behalf of similarly situated individuals, | ) ) ) | |
| *Plaintiff,* | ) ) | No. 2023-CH-01872 |
| v. | ) ) | Hon. Celia G. Gamrath |
| CELEBRITY HOME LOANS, LLC, an Illinois limited liability company; and CELEBRITY FINANCIAL, INC., a U.S. Virgin Islands corporation, | ) ) ) ) ) | Calendar 6 |
| *Defendants.* | ) ) | |

## DECLARATION OF PAUL T. GESKE

I, Paul T. Geske, hereby aver pursuant to 735 ILCS 5/1-109 that I have personal knowledge of all matters set forth herein unless otherwise indicated, and would testify thereto if called as a witness in this matter.

1.     I am an adult over the age of 18 and a resident of the State of Illinois.

2.     I am fully competent to make this Declaration, and I do so in support of Plaintiff's Motion for Class Certification or, Alternatively, for a Deferred Class Certification Ruling Pending Discovery.

3.     I am an attorney with the law firm McGuire Law, P.C., I am licensed to practice law in the State of Illinois, and I am one of the attorneys representing the Plaintiff in this matter.

4.     McGuire Law, P.C. is a law firm based in Chicago, Illinois that focuses on class actions and complex litigation, representing clients in state and federal trial and appellate courts throughout the country.

5.     The attorneys representing Plaintiff are well-suited to represent the putative classes

- 1 -

FILED DATE: 2/27/2023 4:30 PM 2023CH01872

in this matter. There are multiple attorneys representing Plaintiff and the putative classes, with myself and my colleagues Myles McGuire and Joseph Dunklin seeking to be Class Counsel.

6. I and the other attorneys of McGuire Law, P.C. have regularly handled complex litigation on behalf of consumers and employees, and have extensive experience in class action lawsuits similar in size and complexity to the instant case. McGuire Law, P.C. attorneys have been appointed as class counsel in numerous other complex class actions, including similar class actions involving claims brought by employees against their employer. *See, e.g., Gray v. Mobile Messenger Americas, Inc.* (S.D. Fla. 2008); *Gresham v. Keppler & Associates, LLC* (Sup. Ct. Los Angeles Cnty., Cal. 2008); *Sims v. Cellco Partnership* (N.D. Cal. 2009); *Van Dyke v. Media Breakaway, LLC* (S.D. Fla. 2009); *Paluzzi v. mBlox, Inc.* (Ill. Cir. Ct. Cook Cnty. 2009); *Ryan v. Snackable Media, LLC* (Ill. Cir. Ct. Cook Cnty. 2011); *Parone v. m-Qube, Inc.* (Ill. Cir. Ct. Cook Cnty. 2010); *Valdez v. Sprint Nextel Corp.* (N.D. Cal. 2010); *Lozano v. Twentieth Century Fox* (N.D. Ill. 2011); *Kramer v. Autobytel* (N.D. Cal. 2011); *Walker v. OpenMarket, Inc.* (Ill. Cir. Ct. Cook Cnty. 2011); *Schulken v. Washington Mutual Bank* (N.D. Cal. 2011); *In re Citibank HELOC Reduction Litig.* (N.D. Cal 2012); *Murray v. Bill Me Later, Inc.* (N.D. Ill. 2014); *Valladares v. Blackboard, Inc.* (Ill. Cir. Ct. Cook Cnty. 2016); *Hooker v. Sirius XM Radio, Inc.* (E.D. Va. 2017); *Flahive v. Inventurus Knowledge Solutions, Inc.* (Ill. Cir. Ct. Cook Cnty. 2017); *Serrano v. A&M (2015) LLC* (N.D. Ill. 2017); *Seal v. RCN Telecom Servs., LLC* (Ill. Cir. Ct. Cook Cnty. 2017); *Vergara v. Uber Technologies, Inc.* (N.D. Ill. 2018); *Zepeda v. International Hotels Group, Inc.* (Ill. Cir. Ct. Cook Cnty. 2018); *Kovach v. Compass Bank* (Cir. Ct. Jefferson Cnty,. Ala. 2018); *Svagdis v. Alro Steel Corp.* (Ill. Cir. Ct. Cook Cnty. 2018); *Zhirovetskiy v. Zayo Group, LLC* (Ill. Cir. Ct. Cook Cnty. 2019); *Marshall v. Life Time Fitness, Inc.* (Ill. Cir. Ct. Cook Cnty. 2019); *McGee v. LSC Communications, Inc.* (Ill. Cir. Ct. Cook Cnty. 2019); *Prather v. Wells Fargo Bank,*

FILED DATE: 2/27/2023 4:30 PM   2023CH01872

*N.A.* (N.D. Ill. 2019); *Nelson v. Nissan North America, Inc.*, (M.D. Tenn. 2019); *Smith v. Pineapple Hospitality Grp.* (Ill. Cir. Ct. Cook Cnty. 2020); *Garcia v. Target Corp.* (D. Minn. 2020); *Roberts v. Superior Nut and Candy Co., Inc.* (Ill. Cir. Ct. Cook Cnty. 2020); *Rafidia v. KeyMe, Inc.* (Ill. Cir. Ct. Cook Cnty. 2020); *Burdette-Miller v. William & Fudge, Inc.* (Ill. Cir. Ct. Cook Cnty. 2020); *Farag v. Kiip, Inc.* (Ill. Cir. Ct. Cook Cnty. 2020); *Lopez v. Multimedia Sales & Mktg., Inc.* (Ill. Cir. Ct. Cook Cnty. 2020); *Prelipceanu v. Jumio Corp.* (Ill. Cir. Ct. Cook Cnty. 2020); *Williams v. Swissport USA, Inc.* (Ill. Cir. Ct. Cook Cnty. 2020); *Glynn v. eDriving, LLC* (Ill. Cir. Ct. Cook Cnty. 2020); *Pearlstone v. Costco Wholesale Corp.* (E.D. Mo. 2020); *Kusinski v. ADP, LLC* (Ill. Cir. Ct. Cook Cnty. 2021); *Draland v. Timeclock Plus, LLC* (Ill. Cir. Ct. Cook Cnty. 2021); *Harrison v. Fingercheck, LLC* (Ill. Cir. Ct. Lake Cnty. 2021); *Rogers v. CSX Intermodal Terminals, Inc.* (Ill. Cir. Ct. Cook Cnty. 2021); *Gonzalez v. Silva International, Inc.* (Ill. Cir. Ct. Cook Cnty. 2021); *Salkauskaite v. Sephora USA, Inc.* (Ill. Cir. Ct. Cook Cnty. 2021); *Williams v. Inpax Shipping Solutions, Inc.* (Ill. Cir. Ct. Cook Cnty. 2021); *Roberts v. Paramount Staffing, Inc.* (Ill. Cir. Ct. Cook Cnty. 2021); *Roberts v. Paychex, Inc.* (Ill. Cir. Ct. Cook Cnty. 2021); *Zanca v. Epic Games, Inc.* (Sup. Ct. Wake Cnty., N.C. 2021); *Rapai v. Hyatt Corp.*, 2017-CH-14483 (Ill. Cir Ct. Cook Cnty. 2022).

7.     Recognized as pioneers in the field of consumer class actions, McGuire Law, P.C. attorneys have served as counsel of record for groundbreaking rulings obtained at the federal district and appellate court levels, as well as at the U.S. Supreme Court. *See, e.g., Shen et al. v. Distributive Networks, Inc.*, (N.D. Ill. 2007); *Weinstein v. The Timberland Co.*, (N.D. Ill. 2008); *Satterfield v. Simon & Schuster*, (N.D. Cal. 2010); *Espinal v. Burger King Corporation et al.*, (S.D. Fla. 2010); *Lozano v. Twentieth Century Fox*, (N.D. Ill. 2011); *Rojas v. Career Education Co.*, (N.D. Ill. 2012); *Pimental v. Google, Inc.*, (N.D. Cal. 2013); *Lee v. Stonebridge Life Ins. Co.*, (N.D.

FILED DATE: 2/27/2023 4:30 PM   2023CH01872

Cal. 2013); *In re Jiffy Lube Spam Text Litigation*, (S.D. Cal. 2014); *Valladares et al. v. Blackboard, Inc. et al.*, (N.D. Ill. 2015); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

8.      I received my B.A. *cum laude* from the University of Illinois at Chicago, and I received my J.D. *magna cum laude* from the Chicago-Kent College of Law. In addition to my class action experience, I have extensive experience in complex commercial litigation and have regularly litigated cases in state and federal courts across the nation, including in the U.S. District Courts for the Central District of California, Eastern District of Michigan, Eastern District of Missouri, Southern District of Florida, Northern District of Illinois, and before the Judicial Panel on Multidistrict Litigation.

9.      I and the other attorneys at McGuire Law have diligently investigated the facts and claims at issue and have dedicated substantial resources to this matter. McGuire Law, P.C. has expended significant resources diligently prosecuting this action to date, including, among other things, investigating Defendants' unlawful mass layoffs; evaluating the facts giving rise to the claims asserted by the Plaintiff, including potential defenses thereto; and reviewing relevant documents such as Defendants' employment contracts. McGuire Law, P.C. will continue to diligently investigate and prosecute this matter. McGuire Law, P.C. has the financial resources necessary to fully prosecute this action through trial and to provide the necessary and appropriate notice to the class members should Plaintiff's proposed class be certified.

Under penalties as provided by law, pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in the above certificate of service are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Executed on February 27, 2023          */s/ Paul T. Geske* _____
                                        Paul T. Geske