UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL BLAKE, individually and on behalf of similarly situated individuals, )<br><br>Plaintiff,<br><br>v.<br><br>CELEBRITY HOME LOANS, LLC, & CELEBRITY FINANCIAL, INC., a U.S. Virgin Islands Corporation.<br><br>Defendants. | No. 23 C 1839<br><br>Judge Sara L. Ellis |

## OPINION AND ORDER

On February 13, 2023, Defendant Celebrity Home Loans, LLC ("CHL") fired Plaintiff Michael Blake, along with many other employees, without notice. Blake sued CHL and its parent company, Celebrity Financial, Inc. ("CFI"), in the Circuit Court of Cook County, alleging violations of the federal Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq.*, and the Illinois Wage and Payment Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1. CHL removed the case to this Court, invoking the Court's original jurisdiction under 28 U.S.C. § 1331. Blake now seeks to remand the case to state court, contending that CFI did not timely join the removal, making it improper. Because Blake did not properly serve CFI until April 20, 2023, and CFI joined the removal on May 11, 2023, the Court finds that CHL properly removed the case and denies the motion to remand.

## BACKGROUND

On February 7, 2023, CHL notified its employees that On Q Financial, Inc., was acquiring the company and that it would be furloughing approximately 75% of its staff. But less than a week later, on February 13, 2023, CHL emailed separation letters to approximately 92%

of its workforce, including Blake, stating that "due to unanticipated events we must terminate your employment today . . . at 5pm EST." Doc. 3-1 at 11. These letters informed the affected workers that CHL was "unable to process [its] full payroll obligations on 2/16/2023," that this meant the employees would "not receive compensation during this pay period," and that CHL was "anticipating additional funds and believe[d] this [was] only a timing issue with [its] intent to provide [employees] all compensation that [was] owed to [them] over the next several weeks." *Id.*

Blake alleges that CHL failed to give its employees adequate notice of the mass layoff in violation of the WARN Act, which requires certain employers to provide employees with sixty days of advance notice prior to a "plant closing or mass layoff." 29 U.S.C. § 2102(a). Blake also contends that by delaying payment of his outstanding compensation, CHL violated the IWPCA, which requires employers to "pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 Ill. Comp. Stat. 115/5.

On February 24, 2023, Blake filed his complaint in the Circuit Court of Cook County. On March 2, 2023, Blake served the summons and complaint on CHL's registered agent, the Illinois Corporation Service Company. *See* Docs. 12, 13. The Illinois Corporation Service Company is not CFI's registered agent. On March 24, 2023, CHL removed the case to this Court. *See* Doc. 3. Because CFI had not yet been served, it did not officially join the removal. Nonetheless, the notice of removal stated that "CFI would not oppose a notice and motion for removal if and when it might be served." Doc. 3 ¶ 3. On April 19, 2023, the Circuit Court of Cook County issued a second summons for CFI, and on April 20, 2023, Blake properly served CFI in the U.S. Virgin Islands, where it is incorporated. On April 24, 2023, Blake moved to

remand the case, arguing that CHL's removal was deficient because CFI had not joined or consented to removal. On May 11, 2023, CFI joined CHL's removal.

## LEGAL STANDARD

A defendant may remove a case filed in state court that the plaintiff could have originally filed in federal court. 28 U.S.C. § 1441; *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2000). The removing party bears the burden of demonstrating that removal is proper, and any doubt regarding jurisdiction should be resolved in favor of remand. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). The Court may remand a case for lack of subject matter jurisdiction or for failure to comply with the removal statutes. 28 U.S.C. §§ 1446, 1447(c); *GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 625–26 (7th Cir. 2013).

## ANALYSIS

Blake argues that CHL improperly removed the case and that this Court must remand it because CFI did not join the removal within thirty days, as required by 28 U.S.C. § 1446(b). CFI contends that Blake did not properly serve it until April 20, 2023, and that it timely joined CHL's removal on May 11, 2023. Blake, however, maintains that he properly served CFI on March 2, 2023, when Blake served the summons and complaint on CHL's registered agent, because a parent company can be served through its subsidiary if the entities have a sufficiently close relationship. *See In re Subpoena To Huawei Techs. Co., Ltd.*, 720 F. Supp. 2d 969, 973 (N.D. Ill. 2010). Because CFI and CHL do not have a sufficiently close relationship, the Court finds that Blake did not properly serve CFI until April 20, 2023, and denies Blake's motion to remand.

Under 28 U.S.C. § 1446(b)(2)(A), "all defendants who have been properly joined and served must join in or consent to the removal of the action." The consent must be in writing and it does not suffice, for instance, that CHL stated in its notice of removal that CFI would not

3

oppose removal. *See Miller v. Fed. Int'l, Inc.*, No. 09 C 105, 2009 WL 535945, at *1 (S.D. Ill. Mar. 4, 2009) ("[I]t is not enough for the removing defendants to say in their notice simply that all the other defendants do not object to removal." (citing *Roe v. O'Donohue*, 38 F.3d 298, 301 (7th Cir. 1994))); *see also Gossmeyer v. McDonald*, 128 F.3d 481, 489 (7th Cir. 1997) ("[A]ll served defendants . . . have to support the petition in writing, i.e., sign it."). "The defendant seeking removal must secure consent to removal from all of the other properly served defendants within the thirty-day period removal is permitted," and "a defendant's failure to include other defendants' consent may only be cured *within* the 30-day time period." *Compassionate Pain Mgmt., LLC v. Frontier Payments, LLC*, No. 17 C 5568, 2017 WL 4423409, at *3 (N.D. Ill. Oct. 4, 2017) (citations omitted) (internal quotation marks omitted). Therefore, if Blake had properly served CFI on March 2, 2023, as Blake contends, then removal was improper because CFI did not join the removal until May 11, 2023. *See id.*

"It is clear under Illinois law that '[w]here the facts indicate that one corporation so controls the affairs of another corporation that the two entities are essentially one, the court will disregard the corporate entities and hold service of process on one corporation effective as to the others.'" *Schlunk v. Volkswagenwerk Aktiengesellschaft*, 145 Ill. App. 3d 594, 608 (1986) (quoting *Rymal v. Ulbeco, Inc.*, 33 Ill. App. 3d 799, 803 (1975)). But "[t]he mere existence of a parent-subsidiary relationship is insufficient to establish the close ties necessary for a subsidiary to be deemed a parent's agent for service of process." *Wissmiller v. Lincoln Trail Motosports, Inc.*, 195 Ill. App. 3d 399, 403 (1990). While there is no "bright-line test for determining" how closely interrelated a parent and a subsidiary must be "before the subsidiary will be deemed [the parent's] agent for purposes of service of process under Illinois law," Illinois courts have considered whether:

>(1) the subsidiary was established and wholly owned by the parent;
>
>(2) the parent paid the salaries of the subsidiary's directors;
>
>(3) the parent guaranteed the subsidiary's lease;
>
>(4) the subsidiary's sole business was the sale of parts for the parent;
>
>(5) the parent listed the subsidiary's address in advertisements;
>
>(6) the subsidiary existed primarily to promote the sale and distribution of the parent's products;
>
>(7) the subsidiary was obligated to repair and sell parts for the parent's products;
>
>(8) the subsidiary was contractually required to apprise the parent of all aspects of its business;
>
>(9) the subsidiary was authorized to prosecute trademark infringement suits in the parent's name;
>
>(10) the parent controlled the subsidiary's choice of dealers, designation of products and services, stock levels, and methods of ordering;
>
>(11) the parent dominated the subsidiary's board of directors;
>
>(12) the subsidiary conducted its board meetings in the domicile of the parent; and
>
>(13) the subsidiary was listed on a consolidated financial sheet along with the parent rather than publishing its own annual report.

*Chung v. Tarom, S.A.*, 990 F. Supp. 581, 584 (N.D. Ill. 1998).[1] No single factor is dispositive. *Fed. Equip. Corp. v. Puma Indus. Co.*, 182 F.R.D. 565, 572 (N.D. Ill. 1998) ("Considering the above factors with no one factor being dispositive, the court finds that there is not enough

---

[1] Blake frames his analysis around the seven general factors identified in *Elmhurst Hotel Corp. v. Associated Business Telephone Systems Corp.*, No. 97 C 5541, 1998 WL 60803, at *3 (N.D. Ill. Feb. 6, 1998), however, courts in this district more frequently analyze the thirteen factors in *Chung*. *See, e.g.*, *Philips Med. Sys. (Cleveland), Inc. v. Buan*, No. 19 C 2648, 2021 WL 1536173, at *8 (N.D. Ill. Apr. 19, 2021); *Forde v. Arburg GMBH + Co KG*, No. 20 C 2904, 2021 WL 148877, at *4 (N.D. Ill. Jan. 15, 2021). Because the Court finds the *Chung* factors most helpful in guiding its analysis of control, it applies the more specific *Chung* factors.

evidence to show that [parent] exercises the degree of control over [subsidiary] that is necessary to find that [subsidiary] was [parent]'s agent for the purposes of service of process."). Rather, courts ask whether the totality of the factors establish that the parent company has sufficient control over the subsidiary for the subsidiary to be considered the parent's agent. *Id.*; *see also Akari Imeji Co. v. Qume Corp.*, 748 F. Supp. 588, 591–92 (N.D. Ill. 1990) ("[A] guiding principle underlying the factors [is] the issue of control.").

Blake argues that the evidence shows a close enough relationship between CFI and CHL such that the Court can deem CHL to be CFI's agent for service of process. In support, Blake presents evidence that: CHL is a wholly owned subsidiary of CFI; CFI executed a document entitled "Written Consent of the Member" purporting to show that the company exercised exclusive control over CHL's board of directors by unilaterally appointing the board, Doc. 30-1 at 1 (the "Written Consent"); some of the board members for CHL are also board members of CFI; the companies signed an operating agreement and a management services agreement; both companies share the "Celebrity" branding; CFI's website references CHL, lists CHL's Nationwide Multistate Licensing System & Registry ("NMLS") number, and directs customers to "[c]ontact Celebrity Home Loans, LLC for more information and up-to-date rates," Doc. 15-6 at 6; CHL and CFI share a registered agent in the U.S. Virgin Islands; and CFI loaned CHL $1,154,010.[2] Blake argues that CHL exists primarily to promote the sale of CFI's products. But while these facts show a close relationship between CFI and CHL, they do not show that CFI had sufficient control over CHL to deem CHL an agent of CFI. *See Chung*, 990 F. Supp. at 586

---

[2] CFI objects to the Court considering hearsay evidence, such as the LinkedIn profiles Blake attaches as exhibits to his motion to remand. Blake argues that the Court may consider such evidence on a motion to remand and further argues that the evidence he presents fits into exceptions to the hearsay rule. Because even considering the supposedly hearsay evidence the Court finds Blake has not established sufficient control, the Court need not resolve this issue.

6

("Mere affiliation does not justify deeming one corporation the agent of another corporation for the service of process.").

Rather, considering the evidence presented as a whole, CFI and CHL appear to have a normal parent-subsidiary relationship. That both companies use the "Celebrity" branding shows that the companies are related, but affiliation alone is insufficient to show control. *See Fed. Equip. Corp.*, 182 F.R.D. at 572 (parent and subsidiary using "Puma" branding showed affiliation but not control); *see also Chung*, 990 F. Supp. at 586 (affiliation not enough to show control). Further, that both companies use the same registered agent in the U.S. Virgin Islands says nothing about CFI's control over CHL or Blake's attempted service in Illinois.

As to the overlapping board members, CFI admits that four out of eleven of CHL's directors are also CFI officers, that it executed the Written Consent, and entered into an operating agreement with CHL. But the parties cite no authority, and the Court has found none, drawing a clear line of when a board of directors so overlaps that the parent dominates the board. And the Court declines to draw that line here because even in cases where officers of a parent corporation comprised the *majority* of the subsidiary's board, courts have found no control when the "parent and subsidiary observe other corporate formalities." *Forde*, 2021 WL 1488787, at *4 (no control where two out of three of the company's directors were officers of the parent corporation but companies observed other corporate formalities); *Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 870 (N.D. Ill. 1998) (no control although majority of subsidiary's directors were also members of parent's board of directors). CFI puts forward two affidavits to show that the two companies operate separately. The first affidavit is from Scotty Pickle, the former Chief Financial Officer of CHL and current Senior Vice President of Finance at CFI, which states that CHL alone manages its "day to day management and day to day operations[;]"

7

CHL has full control over its hiring and firing decisions; CHL pays its employees instead of issuing payment through CFI; the companies do not share offices; and CHL holds "regular business meetings with its executive officers[] and management meetings with CHL's managers," with CFI personnel typically not in attendance. Doc. 28-3 at 1–2. The second affidavit, from David Robnett, the current CEO of CFI and CHL, explains that CFI "merely approved CHL's [board] selections as a formality acting essentially as a rubber stamp for these decisions made by CHL." Doc. 42-1 ¶ 3. These explanations show that, although CFI is involved in CHL's management, the latter still has significant operational independence such that the overlap of its board members does not establish control sufficient to deem CHL as CFI's agent for service of process.

       Blake further argues that CHL exists primarily "to promote the sale and distribution" of CFI's products. *See* Doc. 15 at 13. In support of this argument, Blake points to CFI's advertising of CHL's services on its website and that "CHL's loan officers do not appear to work with any other mortgage lenders to carry out CFI's mortgage lending services," and thus "exists predominately to promote the sale and distribution of its parent's products." *Id.* (quoting *Schlunk*, 145 Ill. App. 3d. at 606). While CFI lists information about all of the "Celebrity" companies on its website, simply listing information about a subsidiary does not show that CFI controls CHL. *See Forde*, 2021 WL 148877, at *4 (no control where subsidiary listed parent company's information on website). Rather, it is exactly what one would expect of related companies. *See Chung*, 990 F. Supp. at 586 ("Mere affiliation does not justify deeming one corporation the agent of another corporation for the service of process."). Further, Blake provides no support beyond speculation for the contention that CHL exists solely to sell CFI's

8

products. Without more, the Court cannot find that CFI exercised sufficient control over CHL to deem CHL as CFI's agent for service of process.

Although Blake does identify two pieces of evidence—the loan and the management services agreement—that provide support for his argument, they do not surmount the other factors that the Court already considered that caution against finding that CHL is CFI's agent for service of process. The loan of $1,154,010 could show that CFI provided CHL with funds to support its working capital, which is a factor that supports a finding of an agency relationship. *See Qume Corp.*, 748 F. Supp. at 595 n.15. CFI's response—that CHL repaid the loan only after the company satisfied most of its obligations to its employees—does not address the issue of control that is at the crux of the Court's analysis. And the management services agreement arguably satisfies two of the *Chung* factors, namely that the subsidiary opens its books to the parent and the parent guarantees the subsidiary's lease. *See Chung*, 990 F. Supp. at 584. Again, CFI's response is lacking, as it simply states that it had "no role, control, nor supervision over the vast majority of CHL's employees." Doc. 42 at 4. However, even though the Court credits Blake's argument with these points, his claim that he served CFI through CHL still fails in the face of the remaining factors the Court has already discussed. This means that Blake did not properly serve CFI until April 20, 2023, making its failure to consent to the removal of this case in writing until May 11, 2023 acceptable.

## CONCLUSION

For the foregoing reasons, the Court denies Blake's motion to remand [15].

Dated: January 3, 2024

_____
SARA L. ELLIS
United States District Judge

9