**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL BLAKE, individually and on behalf of similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | No. 23 C 1839 |
| v. | ) ) | Judge Sara L. Ellis |
| CELEBRITY HOME LOANS, LLC, & CELEBRITY FINANCIAL, INC., a U.S. Virgin Islands Corporation. | ) ) ) ) | |
| Defendants. | ) | |

**<u>OPINION AND ORDER</u>**

Plaintiff Michael Blake sued Defendants Celebrity Home Loans, LLC ("CHL") and its parent company, Celebrity Financial, Inc. ("CFI"), alleging violations of the federal Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq.*, and the Illinois Wage and Payment Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq.*, after CHL fired Blake and many of his coworkers in February 2023. CHL removed the case to this Court, Doc. 3, and the Court decided to retain jurisdiction after rejecting Blake's arguments that CHL acted as CFI's alter ego, which would have resulted in remand to state court, *see* Doc. 49. CFI now challenges whether it is subject to personal jurisdiction in this District, moving to dismiss Blake's complaint under Federal Rule of Civil Procedure 12(b)(2). As CFI's motion to dismiss was pending, Blake asked the Court to reconsider its initial denial of his motion to remand. Because CFI's contacts with Illinois do not sufficiently relate to Blake's claimed injury, the Court grants CFI's motion to dismiss for lack of personal jurisdiction and denies as moot Blake's motion to reconsider the previous order denying remand to state court.

# BACKGROUND

## I.      Blake's Motion to Strike

Before discussing the relevant facts, the Court must address Blake's motion to strike the Supplemental Affidavit of David Robnett (the "Robnett Affidavit"), which CFI appended and relied upon in its reply to the motion to dismiss.  *See* Doc. 56-2.  Blake argues that that the Robnett Affidavit improperly presents new facts for the first time in reply, and that it contains facts that CFI should have made known or produced during the depositions taken and interrogatory responses propounded during jurisdictional discovery.  CFI replies that the Robnett Affidavit appropriately provides rebuttal evidence to some of Blake's factual claims, and that Blake did not ask sufficiently precise questions during his deposition of Robnett that would have elicited similar information that Robnett provided in the affidavit.  Although the Court agrees that the Robnett Affidavit does not improperly bring novel facts to the Court's attention, *see Baugh v. City of Milwaukee*, 823 F. Supp. 1452, 1456–57 (E.D. Wis. 1993) ("It seems absurd to say that reply briefs are allowed but that a party is proscribed from backing up its arguments in reply with the necessary evidentiary material."), it nevertheless finds that CFI's gamesmanship during Robnett's deposition warrants striking this affidavit as a sanction.  Specifically, the Court finds that CFI's counsel improperly instructed Robnett to not answer Blake's counsel's line of questions regarding CFI's provision of representation and warranty relief to any other company aside from CHL.  *See* Fed. R. Civ. Pro. 30(c)(2) ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  Although the Court limited Blake's discovery to that which would be relevant for assessing personal jurisdiction, *see* Doc. 26, CFI's counsel took this restraint too far when he instructed Robnett to not answer this question and, presumably,

questions along a similar line. *See Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 591 ("[C]ourts have generally concluded that it is improper to instruct a witness not to answer a question based on a relevancy objection." (collecting cases)). For example, given points CFI makes in its brief and the facts that Robnett sets out in his affidavit, it is clear that CFI believed CFI's involvement with other companies mitigated the importance of its involvement with CHL. *See* Doc. 56 at 15 ("CFI spent considerable time on growth and acquisitions on other entities unrelated to CHL, including insurance, minority investments, and consulting services."), Doc. 56-2 at ¶ 27 ("CFI spent considerable time and effort on growth and acquisitions for other entities unrelated to CHL. [These] include[ed] banking, insurance, minority investments, and providing consulting services to other entities that had no connection to CH[L]."). The Court thus strikes the Robnett Affidavit and will not consider arguments that CFI made in its reply brief that rest upon the affidavit. *See* Fed. R. Civ. P. 30(d)(2) ("The court may impose an appropriate sanction . . . on a person who impedes, delays, or frustrates the fair examination of the deponent.").

## II. Factual Background

CFI is a U.S. Virgin Islands-based entity incorporated under U.S. Virgin Island law. Shortly after its creation in 2018, CFI acquired full ownership over CHL, formerly known as Midwest Equity Mortgage LLC. CHL was a home mortgage lending company organized as a limited liability company under Illinois law with its headquarters in Illinois, although it had many offices outside of Illinois that generated the bulk of its revenue. CHL employed many people within Illinois—Blake was one such employee. Blake worked as a retail loan officer from 2018 until CHL terminated his employment (along with 92% of its other employees in a mass layoff) on February 13, 2023.

3

CFI does not have a significant physical presence in Illinois, and obeyed corporate formalities between itself and CHL. As Scotty Pickle, CFI's Senior Vice President of Finance ("SVPF"), explains in his declaration (the "Pickle Declaration"), "CFI does not have any physical office" in Illinois and "is not licensed nor able to do business in the real estate mortgage business" in Illinois. Doc. 25-2 ¶ 2. The majority of CFI's employees and officers lived outside of Illinois, with the exception of CFI's Chief Technology Officer. *Id.* ¶ 3. Pickle declares that "CFI does not perform any business in Illinois relating to home mortgages" and that CHL was solely responsible for such tasks. *Id.* ¶ 4. Indeed, CHL had independent management meetings and company conferences and retreats exclusive to CHL personnel, which Pickle explains, legitimized the separation between the parent and its subsidiary. Pickle reports exclusively discussing CHL's business on the occasions where he attended CHL meetings in his capacity as CFI's SVPF. Pickle also attests to CHL's former employment of independent legal counsel, and to the fact that only four of CHL's eleven executive officers held joint positions with CFI.

Although CHL had operational independence from CFI, the parent company still played a role in its subsidiary's business. CFI and CHL entered into two separate agreements for services that CFI would provide to CHL. The first agreement was a Professional Management Services Agreement, whereby CFI would provide executive, managerial, and personnel staffing services as per CHL's demands. As compensation for the agreement, CHL agreed to pay CFI its costs plus five percent of CHL's pre-tax monthly profitability. The second agreement was an Agreement to Provide Contractual Representation and Warranty Relief, whereby CFI agreed to indemnify CHL against certain risks in exchange for 0.001% of the loan volume amount for which it provided relief. Under this agreement, CFI obtained the right—but not the obligation— to review all loan purchase agreements into which CHL entered.

4

CFI's officers also occasionally weighed in on internal CHL matters. CFI's Chief Administrative Officer and General Counsel John Matheson participated in decisions involving departure negotiations with some of CHL's employees, responded to a state regulator on CHL's behalf, and was asked by Robnett or other CHL officers to provide advice regarding CHL's decision to institute mass layoffs. CFI's President, Eric Meadow, also participated in some of these conversations and negotiated the early termination or sublease of a CHL satellite office when it was no longer useful.

CFI eventually decided to sell CHL to another company. It found a potential buyer in On Q. On February 3, 2023, On Q signed the Asset Purchase Agreement, which identified CHL as the "Seller" and CFI as the "Member." Doc. 51-6 at 3. However, on February 8, 2023, CHL agreed to accept a $1.1 million loan from CFI for operational requirements, indicating that it was facing a severe cash crunch. This was the only rescue attempt CFI made—not even a week later, on February 13, 2023, CFI sent notices of termination to 92% of its employees. The rapid collapse of the business blindsided On Q, which terminated the Asset Purchase Agreement after learning of the significant layoffs.

Until its collapse, CHL was CFI's primary source of income. According to an interrogatory response, CFI derived 95% of its income from CHL in 2021, 92% in 2022, and 100% in the first three months of 2023 before CHL's demise.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). If the Court rules on the Rule 12(b)(2) motion

without an evidentiary hearing, as here, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id.* at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint liberally with every inference drawn in favor of [the] plaintiff," *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). However, if the defendant submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiff[ ] must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1, but resolves "any factual disputes in the [parties'] affidavits in favor of the plaintiff," *Felland*, 682 F.3d at 672.

## ANALYSIS

In federal question cases, the Court may exercise personal jurisdiction over a defendant only if "federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assoc. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). Although theoretical differences may exist between the federal and Illinois constitutional standards, "no Illinois case has provided a definitive explanation" of these differences, *Matlin*, 921 F.3d at 705, and both standards focus on whether exercising jurisdiction over a defendant is fair and reasonable, *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013). Accordingly, a single inquiry into whether the United States Constitution permits jurisdiction suffices. *See, e.g.*, *Curry*, 949 F.3d at 393; *Wesly v. Nat'l Hemophilia Found.*, 2020 IL App (3d) 170569, ¶ 16 ("[I]t is generally true that, when

6

federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns." (alteration in original) (citation omitted)).

Jurisdiction is proper under the Due Process Clause of the United States Constitution if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017).

Personal jurisdiction comes in two forms: general and specific.[1] *See Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019). Blake does not contend that the Court has general jurisdiction over CFI, so the Court limits its analysis accordingly. Specific jurisdiction arises "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assoc. of Hous. Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010); *see also Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) ("Specific jurisdiction is jurisdiction over a specific claim based on the defendant's contacts with the forum that gave rise to or are closely connected to the claim itself."). For purposes of specific jurisdiction, "[t]he relevant contacts are those that center on the relations

---

[1] The Supreme Court has recently emphasized that a third method of establishing personal jurisdiction exists where a defendant has consented to suit in the forum. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023). Because Blake does not argue that CFI consented to suit in Illinois, the Court need not address the implications of *Mallory* further.

among the defendant, the forum, and the litigation." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800–01 (7th Cir. 2014). The Court thus considers whether CFI "(1) purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state, (2) the alleged injury . . . ar[ose] from [CFI's] forum-related activities, and (3) the exercise of jurisdiction [would] comport with traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673 (internal citations omitted).

### 1.    Purposeful Availment

Blake focuses the bulk of his argument on establishing that CFI played at least some role in CHL's operations such that the parent company purposely availed itself of doing business in Illinois. First, Blake cites communications involving CFI officers discussing separation agreements with CHL employees and the early termination of an Illinois CHL office lease, CFI's General Counsel's response in March 2023 to a state regulatory agency on behalf of CHL, and the involvement of other CFI employees in reviewing CHL employment agreements and consulting on the CHL layoffs. Second, Blake points to agreements between CFI and CHL where CFI would provide managerial services upon CHL's request, as well as representation and warranty relief for CHL's loan purchase agreements. Third, Blake submits evidence regarding the high proportion of income that CFI derived from CHL's operations, which was always at least 92% between 2021 and the first two months of 2023. Fourth, Blake notes CFI's involvement in the attempted sale of CHL to On Q and CFI's subsequent fiscal rescue attempts

of CHL before the deal failed. Blake argues that these are all independent contacts demonstrating CFI's purposeful availment of participating in Illinois' economy.

CFI asserts that its contacts with its subsidiary cannot provide Blake the basis for finding jurisdiction proper in an Illinois court. It relies on the longstanding doctrine that a parent corporation "may provide administrative services for its subsidiary in the ordinary course of business without undermining corporate separateness and triggering personal jurisdiction over the parent." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). But this argument sails past the point that Blake makes, which is not that CFI exerted such a degree of control over CHL such that CHL's contacts suffice to bring CFI into an Illinois court, but that CFI's and its officers' interactions with CHL are independent contacts that make it appropriate to litigate this case in Illinois. And CFI's argument does nothing to counter the limited point on which this prong of the jurisdictional analysis focuses, which is whether CFI availed *itself* of doing business in Illinois. Although, as the Court will discuss in detail below, Blake cannot establish a nexus between CFI's contacts and his claimed injury, for its part CFI cannot seriously contest that its ownership of a company, attempts to sell that company, provision of services to that company, and (limited) involvement in that company's affairs create contacts with the state in which that company resides—here, Illinois. *See, e.g.*, *Hundt v. DirectSat USA, LLC*, No. 08 C 7238, 2010 WL 1996590, at *5 (N.D. Ill. May 17, 2010) (providing assistance to subsidiary to formulate policies indicates purposeful availment of forum); *Abbott Lab'ys v. Mylan Pharm., Inc.*, No. 05 C 6561, 2006 WL 850916, at *4 (N.D. Ill. Mar. 28, 2006) (deriving substantial revenue from state can lead to personal jurisdiction); *Graco, Inc. v. Kremlin, Inc.*, 558 F. Supp. 188, 192–93 (N.D. Ill. 1982) (same). The Court thus

finds that Blake has shown that CFI purposefully availed itself of the privilege of doing business in Illinois.

### 2. Connection to Blake's Claims

"Even where a defendant's conduct is purposefully directed at the forum state, the plaintiff must also show that his injury 'arises out of' or 'relates to' the conduct that comprises the defendant's contacts." *See Felland*, 682 F.3d at 676. Here, the Court does not see how CFI's contacts related to CHL's insolvency and subsequent decision to lay off Blake and his colleagues. For this reason, the Court cannot exercise personal jurisdiction over CFI and must dismiss Blake's complaint.

Blake centers his relatedness argument on the notion that his injury is connected to CFI's contacts with Illinois because CFI purportedly mismanaged the sale of CHL to On Q, leading to the collapse of the subsidiary, and because some of CFI's officers featured in emails connected with CHL-specific employment matters. Both contentions, however, fail.

With respect to On Q's failed acquisition of CHL, Blake's argument reverses the causal chain when he argues that it led to his injury. As he notes in his background section, first CHL, CFI, and On Q signed an Asset Purchase Agreement on February 3, 2023. Doc. 51-6 at 2. CHL then encountered a liquidity crisis from which CFI attempted to rescue its subsidiary, as evidenced by its extension of an approximately $1.1 million loan. Doc. 51-8 at 2. After this rescue attempt failed and CHL no longer had the funds to make payroll, CHL laid off almost all of its employees. Doc. 19-1 ¶ 22. Only after CHL terminated the bulk of its workforce did On Q learn of CHL's financial and personnel woes and decide to cancel the transaction. *See id.* ¶¶ 26–28. This timeline reveals that CHL would have laid off Blake regardless of CFI's alleged mismanagement of the sale of CHL to On Q, making those contacts immaterial to Blake's injury.

10

Anticipating this line of reasoning, Blake argues that personal jurisdiction does not require a causal link between the defendant's contacts and the plaintiff's injury for a court to properly exercise jurisdiction. *See Howell v. Bumble, Inc.*, No. 21 C 6898, 2023 WL 6126492, at *3 (N.D. Ill. Sept. 19, 2023) ("The link between the suit and the defendant's forum contacts need not necessarily be causal[.]"). And Blake is correct—"[n]one of [the Supreme Court's] precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). But "[t]hat does not mean anything goes." *Id.* The Seventh Circuit has not yet determined how strict courts must be when assessing the nexus between the defendant's contacts with the forum state and the injury, but a nexus must nevertheless exist. "Specifically, the Seventh Circuit has not yet ruled on the conflict between (1) the strictest standard that 'the defendant's contacts with the forum must constitute both the cause in fact and the proximate cause of the injury,' (2) the 'middle-ground approach . . . that specific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test' such that personal jurisdiction is 'reasonably foreseeable,' and (3) the most lenient standard that the defendant's 'contacts constitute a but-for cause of the injury.'" *Shott v. Rush Univ. Med. Ctr.*, No. 21 C 1243, 2022 WL 1576814, at *4 (E.D. Wis. Apr. 28, 2022) (citing *Tamburo v. Dworkin*, 601 F.3d 693, 708–09 (7th Cir. 2010)). As discussed, it does not appear that CFI's inability to close its deal to sell CHL to On Q was even a but-for cause of Blake's injury, so contacts arising out of the failed transaction would not satisfy even the lowest bar that Blake must clear to demonstrate jurisdiction. *Shott*, 2022 WL 1576814, at *4.

Second, the isolated messages that CFI officers sent regarding topics regarding conversations about CHL employees and employment and separation negotiations regarding

CHL matters, and even limited consultation on CHL's decision to institute mass layoffs, do not establish personal jurisdiction over CFI. Although these are contacts between CFI and the forum state, they either do not relate to Blake's layoff, which is the injury he alleges, *see Shott*, 2022 WL 1576814, at *4, or fall under the umbrella of administrative services that a parent company may provide for its subsidiary without needing to fear jurisdiction in a foreign court, *see Reimer Express World Corp.*, 230 F.3d at 943; *see also Apollo Galileo USA P'ship v. Am. Leisure Holdings, Inc.*, No. 07 C 4403, 2009 WL 377381, at *9 (N.D. Ill. Feb. 11, 2009) (parent corporate officer may review "execution and amendment of all [subsidiary] contracts" without subjecting parent corporation to personal jurisdiction). Blake's case is not about CHL's employment policies generally, but about one specific instance—the mass layoffs. Although CFI's Administrative Officer and General Counsel, John Matheson, participated in at least one conversation regarding the layoffs, he did so pursuant to a services agreement between CHL and CFI. If the Court asserted jurisdiction over CFI on this basis, it would ignore the fact that the provision of such services under a contract does not "undermin[e] corporate separateness and trigger[] personal jurisdiction over the parent." *Reimer Express World Corp.*, 230 F.3d at 943.

Moreover, although contacts such as discussions among CFI officers regarding CHL employment policies, negotiations, and terminations could support an argument that CFI exercised such a high level of control over CHL making it appropriate to pierce the corporate veil and attribute CHL's extensive contacts with Illinois to CFI, *see IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) ("Parents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent, but unless there is a basis for piercing the corporate veil and thus attributing the subsidiaries' torts to the parent, the parent is not liable for those torts, and cannot be served under the tort provision of the

long-arm statute.") (internal citations omitted), Blake has not attempted to support such a finding

here. Indeed, CFI argued in its motion to dismiss that Blake cannot pierce the corporate veil, and

Blake failed to respond. *See* Doc. 25 at 4 (arguing that Blake could not pierce corporate veil);

*see also* Doc. 51 (containing Blake's arguments in opposition to CFI's motion to dismiss, and

lacking a corporate veil-piercing argument). By failing to do so, he waived any argument that

CHL acted as CFI's alter ego as a basis for subjecting CFI to this Court's jurisdiction. *See Bonte*

*v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as

[plaintiff has] done here—results in waiver."). Although Blake argues in his motion to

reconsider that additional documentary evidence would support a reversal of the Court's prior

ruling that CHL did not act as CFI's agent for service of process, that is a lower bar than what

subject matter jurisdiction demands. *Compare Chung v. Tarom, S.A.*, 990 F. Supp. 581, 584

(N.D. Ill. 1998) (setting out thirteen-factor test to determine whether "subsidiary will be deemed

[the parent's] agent for purposes of service and process"), *with Reimer Express World Corp.*, 230

F.3d at 940 ("Illinois courts exercise jurisdiction over parents based on the activities of the

subsidiary where the corporate veil can be pierced, or perhaps where all the corporate formalities

are observed but the subsidiary's only purpose is to conduct the business of the parent.").

Examining CFI's contacts as a whole, Blake argues that a decision out of the Eastern

District of Michigan supports a finding of personal jurisdiction here. *See Transp. Commc'n. Int'l*

*Union v. Sultran, Ltd.*, 187 F. Supp. 2d 880 (E.D. Mich. 2002). In that case, the plaintiff, a union

representing carmen who lost their jobs after PDS USA—Sultran's two-level-down subsidiary—

closed, sued Sultran for breaching the union's contract. *Id.* at 883. Despite the lack of a physical

presence in Michigan, the court found it had personal jurisdiction over Sultran, a Canadian

corporation. Although there was no immediate connection between Sultran and the union's

contract—Sultran was not involved in any negotiations with the union, nor did it make the ultimate decision to close PDS USA's doors—the court still found that it could constitutionally exercise jurisdiction because of Sultran's extensive involvement in the business. *Id.* at 886. These interactions included providing PDS USA's initial capital, Sultran's repeated attempts to fiscally rescue PDS USA in the face of financial difficulties, and the ultimate abandonment of the subsidiary that forced it to close. *Id.* The court also noted the fact that Sultran's officers and directors simultaneously served as directors for PDS USA while having Sultran exclusively pay their salaries and expenses for duties related to governing the subsidiary. The court's inquiry focused on "the totality of Sultran's contacts with Michigan" and found that it was "clear that plaintiffs' causes of action" arose from those contacts. *Id.*

The evidence before the Court indicates that CFI's connections with CHL were not nearly as extensive as the parent's connection with its subsidiary in *Sultran*. CFI did not create CHL, nor was it involved with CHL's capitalization until the company was on the brink of insolvency. Although some of CFI's officers served on CHL's board of directors, it did not dominate the company to the same extent as Sultran did PDS USA. *See Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 870 (N.D. Ill. 1998) (parent did not exercise control over subsidiary although majority of subsidiary's directors were also members of parent's board of directors); *see also* Doc. 49 at 7 ("CFI admits that four out of eleven of CHL's directors are also CFI officers . . . the Court declines to [find that CFI dominated CHL's board] because even in cases where officers of a parent corporation comprised the majority of the subsidiary's board, courts have found no control[.]"). And, as the Court has already discussed, CFI's rescue efforts and failed attempt to sell CHL to On Q do not relate to Blake's injury and cannot provide a basis

for jurisdiction. *See Tamburo*, 601 F.3d at 708–09 (discussing the different causal tests used to assess defendant's contacts' connection with plaintiff's injury).

Because CFI's contacts with Illinois do not relate to Blake's injury, the Court cannot constitutionally exercise personal jurisdiction over his claims.

### 3.    Fair Play and Substantial Justice

For the sake of completeness, the Court finds that the elements of fair play and substantial justice do not allow for personal jurisdiction in Illinois. This inquiry considers the factors of "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985). CFI never employed Blake or the other employees, nor was it responsible for terminating their employment. It only had one officer who resided in Illinois, and its officers infrequently visited Illinois. Moreover, although Blake brings an IWPCA claim, it is unclear whether he may maintain it against CFI, since the IWCPA in the first instance exclusively applies to employers, "does not typically apply to employers that are based out-of-state," and there are no "allegations of substantial in-state activity" against CFI such as a physical in-state presence or a registered agent in Illinois. *Nathan v. Morgan Stanley Renewable Dev. Fund, LLC*, No. 11 C 2231, 2012 WL 1886440, at *17 (N.D. Ill. 2012). Moreover, Blake dismissed CHL, his actual employer, as a defendant prior to CFI filing its motion to dismiss. *See* Doc. 18. Although the Court is not assessing the IWCPA claim under a Rule 12(b)(6) standard, it finds that Illinois has a diminished interest in this case given the fact that a foreign court is unlikely to apply its law. Accordingly, the Court finds that the elements of fair play and

substantial justice do not require an Illinois-based court to hear this case. *See Burger King,* 471 U.S. at 477.

Ultimately, the Court lacks specific personal jurisdiction over CFI because its contacts with CHL did not relate to Blake's injury and because fair play and substantial justice do not demand this case be heard in an Illinois court. Because the Court dismisses this case for lack of personal jurisdiction, it will dismiss Blake's complaint without prejudice. The Court also denies as moot Blake's motion for reconsideration of its prior decision to retain jurisdiction instead of remanding this case to state court.

### 4.     The Court Need Not Transfer this Case to the U.S. Virgin Islands

The Seventh Circuit has recently explained that "when federal courts find that they lack jurisdiction, they bear an independent obligation under § 1631 to consider whether to transfer the case." *North v. Ubiquity, Inc.*, 72 F.4th 221, 228 (7th Cir. 2023); *see also* 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed."). This obligation is "quite limited," however, and requires consideration of whether transfer of the case is "in the interest of justice." *North*, 72 F.4th at 228. A bar on refiling based on the statute of limitations amounts to a compelling reason to transfer a case. *Id.* (citing *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999)). But where the statute of limitations would not bar refiling, the Court need not transfer the case pursuant to § 1631. *Id.* ("If a plaintiff may, on its own, refile its case in a proper forum, the interests of justice do not demand transfer." (quoting *Danziger v. De Llano*, 948 F.3d 124, 133 (3d Cir. 2020))). Here, the statute of limitations does not stand as a bar to refiling. *See* V.I. Code tit. 5, § 31 (setting six-year statute of limitations for

16

"[a]n action upon a liability created by statute, other than a penalty or forfeiture"). Therefore, the Court does not find that the interests of justice require transfer under § 1631 and so dismisses the case without prejudice for lack of personal jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court grants Blake's motion to strike [61]. The Court grants CFI's motion to dismiss [19] and denies as moot Blake's motion for reconsideration [53]. The Court dismisses Blake's complaint without prejudice for lack of personal jurisdiction and terminates this case.

Dated: April 29, 2024

_____
SARA L. ELLIS
United States District Judge

17